ELLEN A. REED, administratrix, in equity, *vs.* FRANKLIN REED.

Sagadahoc.   Opinion June 2, 1883.

*Equity.   Equitable mortgage.   Evidence.   Jurisdiction.   Land in another State. Stat. 1874, c. 175.   Inadequate consideration.*

Since the enactment of stat. 1874, c. 175, this court has complete power over equitable mortgages.

When a conveyance by deed absolute in form is alleged to have been made as a security rather than as a sale, this court has jurisdiction if the parties reside in this state, although the premises conveyed are situated in another state.

In equity, the character of the conveyance is determined by the intention of the parties to it.

A conveyance made by a deed absolute on its face, may in equity be shown by a written instrument not under seal, or by oral evidence alone, to have been intended as a security for a contemporaneous loan or pre-existing debt.

The evidence admissible for such a purpose, is not confined to a mere inspection of the papers alone, but all the material facts and circumstances of the transactions, whatever form the written instruments have been made to assume, may be shown.

In deciding whether a conveyance absolute in form was in fact given as a security, gross inadequacy of the sum advanced compared with a fair value of the premises conveyed is a pregnant fact to be considered.

The character of the conveyance becomes fixed at its inception; and if it be a mortgage, the right of redemption cannot be restricted by any contemporaneous agreement of the mortgagor.

To constitute a mortgage for the payment of money, a subsisting debt must be shown, although no independent personal security therefor is essential.

Bill in equity.

Heard on bill, answer and proof.

The plaintiff is the widow and administratrix of Samuel D. Reed.

The opinion states the material facts.

The following is the written agreement of the defendant referred to in the opinion :

"Whereas, Samuel D. Reed, of Bath, in the county of Sagadahoc and state of Maine, has by his deed dated the eighth day of May, A. D. 1873, conveyed to me certain land situate and lying in the county of Marathon, in the state of Wisconsin, containing in all about twenty-four hundred and eighty acres, in consideration of a certain sum of money paid by me to him on the delivery of said deed, and inasmuch as neither said Samuel D. nor myself are fully acquainted with the real value of said lands, and know not that they are worth a sum beyond what I have already paid him therefor ; and I do not desire to speculate at his expense, nor to deprive him of any advantage that may accrue from the rise in value in said lands ; therefore in consideration of these circumstances, I do for a valuable consideration to me paid by said Samuel D. promise and agree to and with said Samuel D. that if at any time during his lifetime I shall sell and dispose of said land or any part thereof at a sufficient price to leave a balance after deducting all payments, costs, charges, expenses and interest, and all sums of money that may be due me from him, that I will pay said balance to

him if he shall demand it. This promise and agreement does not extend to the heirs, executors or administrators of said Samuel D. but the same is confined to him personally during his lifetime, and it is understood that at his decease no rights or claims of any nature incident to or growing out of this agreement shall survive.

                (Signed)              Franklin Reed."

"Witness, F. W. Weeks.

   Bath, May 8, 1873."

*Adams and Coombs*, for the plaintiff, cited: Story, Conflict of Laws, 454–457; 2 Story, Eq. Jur. 48, 49, 185; 2 Kent's Com. (4th ed.) 463 and notes; *Laughton* v. *Harden*, 68 Maine, 208; *Graves* v. *Blondell*, 70 Maine, 190; *Egery* v. *Johnson*, 70 Maine, 258; *Eveleth* v. *Wilson*, 15 Maine, 109; *Peterson* v. *Grover*, 20 Maine, 363; *White* v. *Chadbourne*, 41 Maine, 149.

   *C. W. Larrabee*, for the defendant.

The plaintiff in her bill says that the conveyance of May 8th, 1873, from her intestate to defendant, was made to secure defendant for money loaned; that the sum loaned was less than the consideration named in said deed; and that the sum thus loaned has been repaid, either by said intestate during his lifetime or since his death, from proceeds of property in defendant's hands that belonged to said estate.

This is negatived by the evidence in writing, both by the deed and the writing signed by defendant and by defendant's answer. There is no direct evidence in the case to contradict the defendant's answer. The declaration of the husband, made to the wife when she released her right of dower, without the knowledge of defendant and of which the defendant was not informed, cannot be received to change an absolute into a conditional deed.

This leaves the allegation of plaintiff as to the point whether or not the deed was defeasible, as stated in her complaint, upon herself, naked in contrast with defendant's positive answer that

he purchased the land in good faith, and paid for it what at the time he believed to be a fair price, viz: two thousand dollars. The answer of defendant was responsive to the allegations in the bill upon this point, and must prevail. 2 Story's Eq. Jurisprudence, 1528; *Flagg* v. *Mann*, 2 Sumner, 206.

The book entries are not such records of deceased as to entitle them to weight. They are the casual jotting upon an unused book. The book itself is the best evidence to show that it is not evidence. To make such a book evidence, it must appear that the entries were made by deceased in the regular course of business. *Lord* v. *Moore*, 37 Maine, 220; 1 Wharton, 684; *Bonnell* v. *Mawha*, 37 N. J. 198.

In this case there was no loan in contemplation, and no stipulation for repayment; and the vendee had no remedy against the vendor. He took no voucher for the money paid, only a deed. Such a relation must exist, either by express or implied agreement, in order to establish a mortgage. *Conway's executors* v. *Alexander*, 7 Cranch, 237.

A stipulation that if the grantor can within a limited time dispose of the land to better advantage, he may do so, paying to the grantee the "consideration money" mentioned in the deed, does not make the instrument a mortgage. 1 Jones Mortgages, 271; *Stratton* v. *Sabin*, 9 Ohio, 28.

If the defendant took the deed from Samuel D. for an agreed consideration, and for the reasons set forth in his answer, voluntarily and without any consideration therefor, gave him the writing set forth in plaintiff's bill, it did not change the tenure or title. It was simply a personal and conditional promise dependent on the conditions therein specified.

There is no intrinsic evidence from the writing itself, in conflict with defendant's answer. It recites that defendant had then already paid all that the land might bring on resale, and the promise that if he should sell during the lifetime of the grantor, for a price sufficient to leave a balance after deducting all payments, costs, charges and interest, and all sums of money that may be due, etc. that he will pay him said balance if demanded, etc. This of itself would not create a defeasance in

the title. And unless it was done in fraud of the other creditors of said Samuel D. the plaintiff in her said capacity, has no claim in law or equity therefor against this defendant.

Counsel further argued the question of alleged fraud in the conveyance from plaintiff's intestate to the defendant, contending that no fraud entered into the transaction, that the defendant paid all that either of the parties at the time thought the land was worth.

VIRGIN, J.   Bill in equity, brought in behalf of the creditors of an intestate's estate which has been duly decreed insolvent, and heard on bill, answer and proof.

The bill alleges that the absolute deed of May 8, 1873, whereby the intestate conveyed to his nephew, the defendant, twenty-four hundred and eighty acres of land situated in Wisconsin, was given in fraud of his creditors, or else to secure a contemporaneous loan of money, and invokes the equity power of the court to so decree.

Prior to 1874, the equity jurisdiction of this court in regard to mortgages, was limited to " suits for the redemption of estates mortgaged." R. S., c. 77, § 5. This provision was invariably construed to apply to those conveyances only which are legal, as distinguished from equitable mortgages — where the condition is a part of the deed itself, or there is a separate instrument of defeasance under seal, executed by the grantee to the grantor, as a part of the absolute conveyance. R. S., c. 90, § 1; *French* v. *Sturdivant*, 8 Maine, 246; *Shaw* v. *Gray*, 23 Maine, 174; *Richardson* v. *Woodbury*, 43 Maine, 206, 210. But since the enactment of St. 1874, c. 175, conferring full jurisdiction in equity, the court has had complete power over equitable mortgages. *Thomaston Bank* v. *Stimpson*, 21 Maine, 195.

The administratrix of an estate duly decreed insolvent, being the representative of all who have an interest in its distribution, is the proper party to bring the suit in behalf of its creditors. *McLean* v. *Weeks*, 65 Maine, 411, 418; *Pulsifer* v. *Waterman*, 73 Maine, 233, 241. And inasmuch as equity proceeds, and its decree is *in personam* and not *in rem*, and the deed is the

subject matter of the suit, the fact that the *situs* of the land described in the deed is in another state, is no objection to the maintenance of the bill as the parties are residents here. *Arglasse* v. *Muschamp*, 1 Vern. 77; *Massie* v. *Watts*, 6 Cranch, 148, 160; *Brown* v. *Desmond*, 100 Mass. 267.

While at law, to constitute a mortgage, the deed itself must contain the condition, or, in case of an absolute deed, there must be a separate instrument of defeasance, of as high a nature as the deed, given by the grantee to the grantor, as a part of the transaction, it is the uniform doctrine of the English court of chancery, as well as of the federal courts and of the highest courts of well-nigh all of the states having full equity jurisdiction, that where a conveyance is made by a deed absolute in form, the transaction may, in equity, be shown by a written instrument not under seal, or by oral evidence alone, to have been intended as a security for a preexisting debt, or for a contemporaneous loan. 4 Kent, (12th ed.) 142 *et seq.;* 3 Lead. Cas. in Eq. (3d Am. ed.) White and Tudor's notes to *Thornbrough* v. *Baker*, 605 *et seq.;* Hare and Wallace's notes, S. C. 624 *et seq.;* 1 Jones Mort. c. 8.

This principle was recognized by this court long before the legislature conferred upon it sufficient jurisdiction to so declare it. *Woodman* v. *Woodman*, 3 Maine, 350; *Fales* v. *Reynolds*, 14 Maine, 89; *Thomaston Bank* v. *Stimpson*, 21 Maine, 195; *Whitney* v. *Batchelder*, 32 Maine, 313, 315; *Howe* v. *Russell*, 36 Maine, 115; *Richardson* v. *Woodbury*, 43 Maine, 206. The *dictum* of a majority of the court in the last mentioned case, holding that when a deed absolute in terms, is given to secure a debt due to the grantee, a resulting trust arises by implication of law, is not supported by any reliable authority or well grounded reason and it has never been followed.

The mere contemporaneous oral agreement or understanding alone of the parties to a deed, is not admissible to vary the express terms of the instrument which in equity as well as in law, is the exponent of their meaning, unless some overruling equity, in addition to such understanding is shown, from which it can be implied that a defeasance was contemplated. *Sutphen*

v. *Cushman*, 35 Ill. 186. It is therefore, a question of fact, whether, on looking through the forms in which the parties have seen fit to put the result of their negotiations, the real transaction was in fact a security or sale. Hence all the facts and circumstances of the transaction, whatever form the written instruments have been made to assume, are admissible, each case depending upon its own. The evidence, therefore, is not confined to a mere inspection of the written papers alone; but "extraneous evidence is admissible to inform the court of every material fact known to the parties when the deed and memorandum were executed. To insist on what was really a mortgage, as a sale, is in equity a fraud, which cannot be successfully practised under the shelter of any written papers, however precise they may appear to be." *Russell* v. *Southard*, 12 How. 139, 147, and cases cited on the latter page. If a deed and memorandum back, of themselves import a sale on condition instead of a mortgage, they are not conclusive, the question being whether their form and terms were not adopted to veil a transaction differing in reality from the appearance it assumed. *Russell* v. *Southard*, *supra*.

Upon similar principles, parol testimony is admissible to show a resulting trust. It is the universally acknowledged doctrine that if one purchase an estate in the name of another, a trust results to him who advances the money when the payment is a part of the original transaction. *Buck* v. *Pike*, 11 Maine, 9, 23; *Dudley* v. *Bachelder*, 53 Maine, 403; *Burleigh* v. *White*, 64 Maine, 23. And oral testimony is admissible to show the facts, although there is no clause in the deed indicating that the conveyance was in trust. And when, in such case, the great equity of the consideration paid by the real purchaser is made to clearly appear, it controls the effect and operation of the deed.

In examining a transaction of the kind now before us, the embarrassed circumstances of the grantor are material. And the inadequacy of the sum advanced, compared with a fair cash value of the premises conveyed, is of great moment. For property holders are not obliged to sell their property for a sum

much less than its fair value, since they can readily realize its real value in the open market. And it is much more reasonable that they should give security on it, than sell it for much less than what they can thus realize. *Rich* v. *Doane, supra.* "When no fraud is practised," said Mr. Justice CURTIS, in *Russell* v. *Southard, supra,* 148; "and no inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and therefore, in the cases on this subject great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold." See also the cases cited by him.

So the general current of authorities holds that courts incline against conditional sales as they do against forfeitures; and when upon all the circumstances, the mind is uncertain whether a security or a sale was intended, the courts guided by prudential reasons, will treat it as the former, 1 Jones Mort. § 279, and cases cited in note 8; *Conway* v. *Alexandor*, 7 Cranch, 218. "Courts of equity" said POLAND, C. J., in *Rich* v. *Doane*, 35 Vt. 125, 128, "have followed the rule of regarding the mortgagor as the weaker party, dealing at a disadvantage and needing protection, so that such cases have been watched with jealousy; and if enough is proved to render it fairly doubtful whether the conveyance was a mere security for a debt, or an absolute conveyance with right of repurchase, the premises have been held redeemable." Under such circumstances, such a decision "is more likely to subserve the ends of abstract justice and avert injurious consequences." 1 Jones Mort. § 279, and cases in note 2. Speaking of the resort of parties to a formal conditional sale, as a device to defeat the equity of redemption, COLE, J., said "the possibility of such resort, together with other considerations, has driven courts of equity to adopt as a rule, that when it is doubtful whether the transaction is a conditional sale or a mortgage, it will be held to be the latter." *Trucks* v. *Lindsey*, 18 Iowa, 504. See also *Russell* v. *Southard, supra,* 151 - 2.

The general rule is that to constitute a mortgage for the payment of money, there must be a subsisting debt therefor,

showing the relation of debtor and creditor. This continuing liability may be express or implied. *Holmes* v. *Grant*, 8 Paige, 243, 259. Hence there need be no bond, note or any other independent personal security therefor. *Smith* v. *People's Bank*, 24 Maine, 185, 195; *Mitchell* v. *Burnham*, 44 Maine, 286; *Brookings* v. *White*, 49 Maine, 483; *Varney* v. *Hawes*, 68 Maine, 442. Anything tending to show that there was a subsisting debt, or advance by way of a loan, goes to prove the transaction to be a mortgage. *Murphy* v. *Calley*, 1 Allen, 107. "If," said WELLS, J., "there is a large margin between the debt, or sum advanced, and the value of the land conveyed, that of itself is an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor." *Campbell* v. *Dearborn*, 109 Mass. 144.

There is another rule which is inflexible, viz. that the character of the transaction, as ascertained by a consideration of all of the material facts attending it, is fixed at its inception; and if it be determined to be a mortgage, the mortgagor cannot be precluded by any contemporaneous agreement from redeeming. *Hale* v. *Jewell*, 7 Maine, 435, 436; *Chase* v. *McLellan*, 49 Maine, 375. "The principle is well settled," said SAVAGE, C. J., in *Clark* v. *Henry*, 2 Cow. 324, "that chancery will not suffer any agreement in a mortgage to prevail, which shall change it into an absolute conveyance upon any condition or event whatever."

"The doctrine of ' once a mortgage always a mortgage,'" said Chan. KENT, "was established by Lord NOTTINGHAM, as early as 1681, in *Bonham* v. *Newcomb*, 2 Vent. 364. . . . The object of the rule is to prevent oppression; and contracts made with the mortgagor, to lessen, embarrass or restrain the right of redemption, are regarded with jealousy, and generally set aside as dangerous agreements founded in unconscientious advantages assumed over the necessities of the mortgagor." 4 Kent, 159. In *Bonham* v. *Newcomb*, *supra*, where an absolute conveyance was given with a defeasance upon payment of one thousand pounds during the life of the grantor, and the grantor covenanted that it should not be redeemed after his death — the chancellor held that the estate was redeemable by the heir, notwithstanding the agreement.

Moreover, it is well settled that the admission of oral evidence in cases of this character is not in contravention of the statute of frauds. *Walker* v. *Walker*, 2 Atk. 98; *Campbell* v. *Dearborn*, 109 Mass. 130; *Carr* v. *Carr*, 52 N. Y. 251; *Wyman* v. *Babcock*, 2 Curtis, 386, 399.

The application of these rules to the facts in this case must determine its decision.

An examination of the evidence leaves no doubt that the plaintiff's intestate was financially embarrassed and needed money when he executed the deed of the Wisconsin lands; and that one of his motives in making the conveyance, was to delay his creditors—some of whom had reduced their claims to judgments —to the end that he might obtain a compromise. And there is some evidence that the defendant had, at least, strong suspicions of his uncle's object. But as our minds hesitate somewhat in coming to the conclusion that he really co-operated in this fraudulent design, we pass it and come to the question whether the conveyance was in fact made for the purpose of securing a loan; and of this, we entertain no doubt.

If the intestate's estate were solvent, and the suit were brought by the plaintiff solely as the personal representative of the deceased grantor, then, inasmuch as his own conduct in the premises, even admitting the transaction to have been a mortgage in equity, could not stand the equitable test which is sought to be applied to the defendant, the bill would be dismissed at once. *Hassam* v. *Barrett*, 115 Mass. 256. But, since, as before seen, the suit is brought in behalf and for the benefit of the creditors whom the intestate intended to defraud, it may be maintained, notwithstanding the fraudulent purpose of the debtor.

The grantor was involved. Several judgments were outstanding against him besides various simple contract debts. He wanted money in his brick business among other things. He conveyed, by deed absolute in form, his Winnegance property, with an understanding it should be reconveyed " on payment of

what the defendant paid on it." If he made a legal mortgage of his property, his equity of redemption would be attached by his creditors. He applied to the defendant for money and obtained, at the time of the conveyance — as the defendant testifies — $400 ; and some time thereafter — the defendant does not know when or whether all at one time — $1600. For this money he gave an unconditional deed of warranty of twenty-four hundred and eighty acres of timber lands in Wisconsin. If the defendant's answer speaks the truth in this connection, he paid only eighty cents per acre. By copy of deeds put into the case, it appears that, after his uncle's death, to wit : in October, 1876, he sold one hundred and sixty acres of the lands, at $6 per acre, and in May, following, eighty acres at $5 per acre.

In his additional answer, filed by direction on exceptions to the original, the defendant alleges that he sold some of the land, the quantity of which he does not recollect, for $650, and estimates the quantity by the rates brought by the other sales less commissions, although he alleges that he kept an account with the land, a copy of which he appends to his answer, as a true exhibit of the facts. Subsequently, in his account sent to the plaintiff, he credits $650 to the brick dealings. In his deposition, he testifies that the two items of $650 are but one in fact, and should be credited to a third transaction distinct and separate from the others and having no connection therewith, the Winnegance property. And yet on cross-examination he is obliged to admit that, at the time he received the $650, he had had no business transaction with his uncle other than that of the Wisconsin lands. These inexplicable, inconsistent statements are such a departure from a straight forward relation of the real facts, that we cannot give much weight to his answer or testimony.

Notwithstanding he was to reconvey the Winnegance property (of which he received an absolute conveyance in January, 1874,) on payment of the amount which he paid on it at various dates ; and by the terms of the written contemporaneous memorandum, given in the Wisconsin land transaction, he agreed to pay any balance (arising from a sale of the lands) " after deducting all payments, costs, charges, expenses and interest, and all sums of

money that may be due" him from his uncle "if he shall demand it;" still he testifies that he never kept any account with him and hence could not show their dealings. And the only excuse he gives, is that he had the deeds and thought that sufficient.

The mere reading of the peculiar terms of the written memorandum, given by the defendant to his grantor, (which he alleges in his answer "was not in fulfilment of any prior understanding between them but originated solely from his own regard for his uncle and was written and delivered after he had received the deed,") excites the gravest suspicion of inequitable advantage, although it takes pains to disavow in terms any "desire to speculate at his expense or to deprive him of any advantage." It undertakes, with great minuteness and greater plausibility, to give a detailed statement of the facts, but does not omit to cover up the real consideration under the general assertion of "a certain sum of money paid," &c. It contains no promise on the part of the defendant, to sell at any time, but craftily stipulates what shall be done with a possible balance, "if at any time, during" his uncle's "lifetime" the defendant "shall sell," &c. ; and then limits his promise to his uncle "personally during his lifetime,"· and recites that "it is understood that at his (uncle's) decease, no rights or claims of any nature incident to or growing out of this agreement shall survive." The remarks of Mr. Justice CURTIS, in the opinion from which we have more than once quoted, are as applicable to this case as to the one before him. "In respect to the written memorandum, it was clearly intended to manifest a conditional sale. Very uncommon pains are taken to do this. Indeed so much anxiety is manifested on this point, as to make it apparent that the draftsman had a somewhat difficult task to perform. But it is not to be forgotten, that the same language which truly describes a real sale, may also be employed to cut off the right of redemption, in case of a loan or security ; that it is the duty of the court to watch vigilantly these exercises of skill, lest they should be effectual to accomplish what equity forbids ; and that in doubtful cases, the court leans to the conclusion that the reality was a mortgage and not a sale."

The attempt of the memorandum to confine all remedies to the grantor personally must fail, since, as heretofore seen, the inflexible rule of law and equity does not tolerate it.

The fact that the intestate must have submitted to the terms of the memorandum is not fatal to the maintenance of the bill. Persons under the double pressure in which the grantor found himself will yield to much that is inequitable and oppressive, and equity weighs an assent thus obtained as not equal to the dust in the scale.

On a careful consideration of the facts in this case — the gross inadequacy of the price alleged to have been paid as compared with its real value, the payment of $650, together with the various circumstances above mentioned, we cannot resist the conclusion that the relation of the parties to the deed was that of borrower and lender, that the sum paid by the defendant to the intestate was a loan although there may have been no collateral personal security given for it, and that the transaction was in fact intended as a mortgage, and that the plaintiff as representative of the creditors, for whom she brings this suit, is entitled to redeem the premises not sold, before the commencement of this suit, to *bona fide* purchasers.

The case must go to a master to state the account between the estate and the defendant, and the case continued until the coming in of his report.   Decree accordingly.

*Bill sustained with costs.*
*Case to go to a master.*

APPLETON, C. J., WALTON, BARROWS, PETERS and SYMONDS, JJ., concurred.