MINER M. JONES, Appellant, v. WM. R. GILLETT.

**Mortgages:** ABSOLUTE DEED: PAROL EVIDENCE. The statute prohibiting proof of an express trust by parol evidence does not prevent oral proof that a deed absolute in form was intended as a mortgage, in such sense that a party claiming an equitable title may

redeem from the holder of the legal title; and this is true even though the legal title was acquired from a third person under an arrangement with another who had undertaken to pay the purchase price, and by whom the purchase money was advanced as a loan.

Same: EVIDENCE. To justify the holding of a deed absolute on its face to be a mortgage the evidence should be clear and satisfactory; but in the instant case the evidence is held to show that defendant took the title from a third person paying the purchase price therefor under an arrangement with plaintiff that he should hold the legal title subject to plaintiff's right to redeem on payment of the purchase money.

Same. The execution of a formal lease between the holder of the legal title to land and one claiming equitable ownership does not necessarily disprove the fact of equitable ownership.

Same: FORFEITURE. Forfeitures are not favored, and to avoid the same for failure to comply with a contract of conditional sale courts will treat the transaction as a mortgage, if warranted by the evidence in so doing.

Same: REDEMPTION BY EQUITABLE OWNER. Where the arrangement is such that an absolute deed is to be held subject to an equitable right to redeem, that right can not be cut off by the subsequent default of the equitable owner.

Same: EXISTENCE OF DEBT. While the existence of a debt is essential to a finding that an absolute deed is in fact a mortgage, still it need not be shown by express covenant, but may be implied from the transaction.

Same: ALLOWANCE OF INTEREST. Where the plaintiff claims that an absolute deed was given to secure a loan and tenders the amount due, interest thereon should not be allowed defendant from the date of the tender, in addition to the rents and profits from the land.

*Appeal from Clay District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, NOVEMBER 17, 1908.

SUPPLEMENTAL OPINION WEDNESDAY, MAY 12, 1909.

ACTION in equity, to have a deed, absolute in form,

under which defendant holds apparent legal title to an eighty-acre tract of land, declared to be a mortgage accepted by defendant, at the instance and request of plaintiff, for the purpose of securing to defendant the payment of the purchase price of said land. There was a decree for defendant, and plaintiff appeals.—*Reversed.*

*F. F. Faville* and *G. H. Martin,* for appellant.

*Buck & Kirkpatrick,* for appellee.

McCLAIN, J.—Defendant's apparent title to the land in controversy was acquired in January, 1899, by a warranty deed from one Davidson, the owner. Plaintiff's claim is that, desiring to purchase the land from Davidson for $1,760 through one Crandall, the agent of the latter, and intending to pay $250 of the purchase price, he applied to defendant for a loan of the balance of the money, and it was verbally agreed between them that defendant would advance the necessary amount at seven percent interest, and take a deed for the land from Davidson as security; that subsequently, plaintiff being unable to advance $250 as contemplated, defendant agreed to advance for plaintiff the entire purchase price, and took the deed from Davidson with that understanding, securing himself for the payment of interest by a nominal lease of the land to plaintiff, at a rental which should amount to seven percent interest on the purchase price and taxes, and that this arrangement continued for several years, and until defendant attempted to repudiate it by refusing to receive any portion of the purchase price, whereupon plaintiff has instituted this action to redeem, tendering the amount advanced by defendant and such interest thereon as has not been satisfied by the payment of the rental provided for in successive leases.

The defendant admits the original arrangement, with

reference to the prospective acquisition of title by defendant, to have been in accordance with plaintiff's claim, but in his answer he alleges that, after the deed was delivered to him, and the full purchase price had been paid by him to Davidson, plaintiff failed to furnish the $250 of the purchase price which was to have been furnished by him, and that thereupon a lease of the land was made by defendant to plaintiff for one year, and that defendant has been ever since the unqualified owner of the land. In this answer the defendant alleges the arrangement between him and plaintiff prior to the delivery of the deed to defendant to have been that, if plaintiff paid $250 before March 1, 1899, defendant would contract to convey him the land on payment of the balance of the original purchase price with interest, but he further alleges that this arrangement was without consideration, and that, on failure of plaintiff to pay the $250 as stipulated, any right or interest which he might have had in the land under such agreement was forfeited. In argument counsel for defendant insist that the $250 to be paid by plaintiff was to have been paid before defendant accepted the deed from Davidson, and that on failure of plaintiff to make such payment defendant accepted the deed, and paid the entire price for the property, for and in behalf of himself only, and that he thereby acquired a perfect and indefeasible title, and that plaintiff has not, and never had, any right to redeem the property from him. This inconsistency between defendant's answer and the position now taken in his behalf by counsel is not very material to the disposition of the case, for the defendant might have amended his answer so as to conform it to the evidence, and no doubt has the right now to insist that plaintiff has failed to establish by the evidence an equitable right to redeem. On the case as presented to us in the record three questions are argued by counsel: First, is parol evidence admissible to show that defendant, taking title from Davidson by deed

absolute in form, holds such title as security only for the repayment to him by plaintiff of the purchase price advanced by him; second, is there sufficient evidence to show that defendant took title subject to any right of plaintiff, in law or equity, to purchase the property from him or to redeem from him as the holder of the apparent absolute title on payment of the purchase price; and, third, if there was any such right on the part of plaintiff, was it a privilege to be exercised by a specified time, or was it a general equitable right to redeem?

I. There can be no doubt, under the decisions of this court, or, for that matter, under the decisions of the courts of equity in other jurisdictions, that the provision of the statute of frauds prohibiting the introduction of parol evidence to establish an express trust (Code, section 2918) does not prevent proof by parol that a conveyance, absolute in form, was intended between the parties to be a mortgage, in such sense that the party claiming an equitable title may redeem from the holder of the legal title by an action in equity. If there ever was a doubt as to whether this rule should be applied also to one who acquires the legal title from a third person under an arrangement with another who undertakes to pay the purchase price, and for whom the purchase money is advanced by way of a loan, such doubt is set at rest in this State at least in the case of *Krebs v. Lauser*, 133 Iowa, 241. In that case it is said: "The question of controlling importance is whether Krebs in fact loaned the appellant [Patterson] the money necessary to buy this farm [from a third person to whom Krebs paid the entire purchase price], and took a conveyance in his own name as security for such loan. If he did, it is clearly competent to prove the transaction by parol testimony, for it is a well-settled rule that a deed absolute on its face may be shown to be a mortgage." And in that case the court, distinguishing the arrangement from one

*1. Mortgages: absolute deed: parol evidence.*

which would be held invalid under the statute because an agreement to hold title for the benefit of another, and not in writing, says: "But if Krebs paid his own money for the land, and took the title thereto under some kind of an agreement that he was to hold it for the use and benefit of the appellant and later convey it to him, such an agreement would create an express trust which must be executed in the same manner as deeds, and hence can not be proved by parol." If then defendant did, at plaintiff's solicitation, acquire title to the land from Davidson, and pay the purchase price therefor with the agreement that the amount paid should be considered as a loan from the defendant to plaintiff, the legal title being held by defendant as security only for such loan, plaintiff is entitled to redeem the property from defendant on paying the money advanced.

II. It is conceded for appellant that, to justify a court of equity in holding a title, apparently absolute and indefeasible, to be in fact security only for a loan, the evi-

2. SAME: evidence. dence must be clear and satisfactory. But we have no difficulty under this record in reaching the conclusion that, when defendant accepted the deed from Davidson, he did so under and in pursuance of some agreement with plaintiff by which the land was to be held for plaintiff's benefit, and plaintiff was to have the right to acquire the title from defendant on payment of the purchase price with interest. Defendant does not deny that he was approached by plaintiff with the request that he furnish the money necessary to enable the plaintiff to acquire a piece of land, and that he consented to do so if the land was satisfactory as security, and he could get seven percent interest for his money. At this time he understood that plaintiff was to pay $250 of the purchase price, and when he was advised what tract of land it was which plaintiff wished to purchase, and that the entire price would be $1,760, he agreed to advance the balance on condition that the land be conveyed to him as security. When

he subsequently (in December, 1898) entered into a written contract with Davidson through Crandall for the purchase of the land, he still understood that plaintiff was to pay $250, and that the title acquired from Davidson was to be held for plaintiff. In that contract it was stipulated that the taxes for 1898 were to be shared equally between him and Davidson, and plaintiff paid one-half of such taxes. If defendant was advised, prior to the acceptance of the deed from Davidson, in January following, that plaintiff, owing to other business arrangements, was unable to make this $250 payment, he did not advise plaintiff that he would not advance the entire purchase price by way of a loan, but proceeded to take the title and pay the entire purchase price, and lease the land to plaintiff at a rental which amounted exactly to seven percent on the money paid and taxes.

It is insisted for appellee that he disclaimed at this time, and continuously thereafter, any obligation to plaintiff with reference to this purchase, but plaintiff's testimony is that defendant required a formal lease as security for interest and taxes, inasmuch as plaintiff had paid no part of the purchase price; and, if plaintiff was to have possession of the land, certainly it would furnish defendant additional security that such possession was taken technically under a lease which would give defendant a landlord's lien. It seems to be well settled that the execution of a lease from the holder of the title to one who claims an equitable right to the property as owner does not necessarily disprove the fact of equitable ownership. *Rogers v. Davis,* 91 Iowa, 730; *Bigler v. Jack,* 114 Iowa, 667.

3. SAME.

We think the evidence as to defendant's conduct, after taking his deed and executing the lease, was wholly inconsistent with the position now taken that plaintiff had forfeited all rights in the property, and that defendant was claiming it under an indefeasible title. For several

years defendant continued to lease the land to plaintiff for exactly seven percent and taxes, although he knew that to be less than the rental value, and knew that plaintiff was subletting the land at a larger rental. He directed one applicant for the renting of the land to consult plaintiff in regard to the matter. When the land had considerably increased in value, he had some negotiations with plaintiff as to the sharing of the profits of the increase, although at this time he was refusing to recognize plaintiff as the equitable owner. And finally the allegations of the answer constitute an admission, not conclusive, but of some significance, that after defendant acquired title from Davidson he held it subject to some right in the plaintiff. If defendant made a binding contract through Crandall for the purchase of the land from Davidson, under an arrangement by which the title was to be held for the benefit of plaintiff, the defendant could not change his relationship to the title without at least insisting upon a forfeiture of plaintiff's rights, and we find no evidence of his having specifically, at any time, in his dealings with plaintiff, insisted upon such forfeiture, until long after the title had been acquired and the forfeiture, if any, had accrued. We think that, if defendant ever had a right to insist on a forfeiture, he waived it by leading plaintiff to believe that his rights in the property, whatever they were, continued to exist.

III. If defendant acquired the title from Davidson subject to some right in the plaintiff, then there is no difficulty in finding that plaintiff's right was one of **4. SAME: forfeiture.** redemption rather than conditional purchase. To avoid the harshness of a forfeiture for failure to comply strictly with the terms of a contract of conditional sale, the courts incline to treat such a transaction as a mortgage, if the evidence will justify them in doing so. *Bigler v. Jack,* 114 Iowa, 667, 673; *Niggeler v. Maurin,* 34 Minn. 118 (24 N. W. 369); *Reed v. Reed,*

75 Me. 264; *Crosby v. Buchanan,* 81 Ala. 574 (1 South. 898); *Reeves v. Abercrombie,* 108 Ala. 535 (19 South. 41); *Edrington v. Harper,* 3 J. J. Marsh. (Ky.) 353 (20 Am. Dec. 145); *Flagg v. Mann,* 2 Sumner, 486 (9 Fed. Cas. No. 4,847).

If the arrangement was in its inception such as to give the plaintiff an equitable right to redeem, that right could not be cut off by plaintiff's sub-

**5. SAME: redemption by equitable owner.** sequent default, for the rule is "Once a mortgage, always a mortgage." "The right to redeem is a necessary incident, and can not be extinguished by a mere covenant that it shall not be claimed after a limited period." *Flagg v. Mann, supra.*

While the existence of a debt from the mortgagor to the mortgagee is essential to sustain a finding that the transaction was in fact a mortgage, yet the debt need not exist by covenant, but may be implied.

**6. SAME: existence of debt.** *Flagg v. Mann, supra.* If plaintiff requested defendant to purchase the land for plaintiff's benefit, and defendant did so purchase it, an implied obligation, on the part of plaintiff, to repay to defendant the amount of the purchase price would necessarily be inferred.

We are satisfied under the evidence that, at the inception of defendant's title, he held for the benefit of plaintiff, that plaintiff's rights have never been forfeited or extinguished in equity, and that plaintiff is entitled to redeem from defendant on the payment of the amount tendered in the petition.

The decree of the trial court is therefore *reversed.*

SUPPLEMENTAL OPINION.

PER CURIAM.—In a petition for rehearing it is urged by appellee that the tender pleaded by appellant should not be given the effect of relieving him from interest on

the amount tendered from the date of such tender, and that appellant should be required to repay subscript taxes paid by appellee and the cost of material for certain fencing which appellee furnished; and it is further insisted that this court in its opinion does not preserve to appellee the benefit of a small judgment in his favor which is not affected by the conclusion announced. If appellee is allowed to retain the profits of the land subsequent to the time of tender, it would be inequitable to give him interest also subsequent to such tender. But, as to this matter and others referred to in the petition for rehearing, we are not able under the record to make final pronouncement, and we find it necessary to remand the case for final decree in the lower court in accordance with the conclusions of this court announced in its opinion. The lower court is directed to determine in accordance with those conclusions the amount to be paid by appellant in effecting redemption. In other respects the petition for rehearing is overruled.

7. SAME: allowance of interest.

The decree of the lower court is therefore *reversed,* and the case is remanded.