## WORLEY, *Receiver,* v. CARTER *et al.*

### No. 1365. Opinion Filed January 9, 1912.

### (121 Pac. 669.)

1. MORTGAGES—Requisites and Validity—Absolute Deed as Mortgage. A deed absolute in form is, in fact, a mortgage, when given to secure the payment of money, even though the parties may have agreed that, upon default in payment within a fixed time, the deed should become absolute.

2. SAME — Requisites and Validity — Absolute Deed as Mortgage. Although a deed may be absolute on its face, if given merely as a security for debt, and is so intended by the parties, it will be held to be a mortgage, with the right of redemption.

3. SAME — Requisites and Validity — Absolute Deed as Mortgage. Where a deed absolute on its face is given in security for a debt, and an agreement is entered into by the parties that the grantee shall execute a reconveyance, conditioned upon the payment by the grantor of the debt secured, and the deed and agreement are of the same date and parts of one transaction, they will be deemed to be a mortgage, with all the qualities and incidents that attach thereto.

4. SAME — Requisites and Validity — Absolute Deed as Mortgage. Whether any particular transaction amounts to a mortgage, or a sale upon condition, or with agreement to reconvey upon a contingency, is to be determined by ascertaining whether the transaction was intended as a loan. If there remains a debt for which the conveyance was only a security, and the collection of which may be enforced independently of the security, the whole transaction amounts to a mortgage, whatever language the parties may have used in expressing their agreement. In such cases, it matters not that the transaction is evidenced by one or more instruments, or what the writings may or may not show, if, nevertheless, the agreement in fact exists. The real intention of the parties, either as shown upon the face of the writing, or as disclosed by extrinsic evidence, must govern in equity.

5. SAME — Requisites and Validity — Absolute Deed as Mortgage. Under the testimony, an instruction which charged the jury that, if they found from the evidence that a deed was executed for the purpose of securing an indebtedness, and that it was further understood and agreed by the parties that, if the debtor failed to repay the indebtedness within a time fixed, then, and in that event, the indebtedness was to become absolute, and the property to become that of the grantee, and payment was not made within said time, the jury should find in favor of the grantee in said suit constitutes reversible error, as it would in effect deprive the debtor of its equity of redemption.

(Syllabus by Sharp, C.)

*Error from District Court, Coal County; A. T. West, Judge.*

Action by T. A. Worley, receiver of the Citizens' Bank of Owl, against Mrs. R. E. Carter and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

*Winfield S. Farmer,* for plaintiff in error.

*D. H. Linebaugh,* for defendants in error.

Opinion by SHARP, C. On June 18, 1906, acting through its officers, the Citizens' Bank of Owl, Ind. T., executed and delivered to J. W. Craine a warranty deed to lots 1 and 2 in block 38, in the town of Owl, Ind. T., now Centrahoma, Okla.; the deed reciting a cash consideration of $4,000. On April 3, 1907, plaintiff in error was, by the United States Court in and for the Central District of Indian Territory, appointed receiver of the bank. On May 6, 1907, the grantee in said deed, J. W. Craine, died intestate, and T. W. Tyler was duly appointed administrator of his estate.

This suit is brought to recover possession of the premises and for the cancellation of the above-mentioned deed. According to the issues joined in the pleadings, the question for determination was whether or not the transactions of June 18, 1906, were intended as a sale or as a mortgage to secure an indebtedness. To sustain the issue that the deed was given merely as a security for a debt, plaintiff introduced H. W. Beard, a director, John W. Beard, president; and D. A. Spears, cashier of the bank; also W. F. Weaver, a merchant who had formerly occupied the stores situated on the lots in controversy; and John Vincent, a notary public. The defendants offered no testimony. We have read the record with care, and there can be no doubt, if the testimony is to be believed, that the giving of the deed by the bank was intended merely as a security for a loan of $1,000, to be repaid by the bank in 60 days.

That the witness D. A. Spears was guilty of reprehensible conduct in procuring the notary public, Vincent, to take the acknowledgment to the contract in January, 1907, there is little room for doubt; but from other testimony it appears that an in-

strument was originally signed and acknowledged before E. P. Boland, a notary public, which was of like tenor and effect, if not the same, as the second. Therefore the testimony of Spears is of secondary importance only. The minutes of the directors' meeting, while undated, recite the conditions upon which the deed was executed by the bank to Craine, and are, in part, as follows:

"After going over the condition of the bank, it was decided that it would be necessary to secure some money to run the bank successfully during the summer months, and Mr. Craine agreed to furnish some on the following conditions: For a deed to be made to the lots on which the brick building now stands, and for him to furnish $1,000 and to give a contract for deed and the deed to be placed in escrow to be placed on record when the money was paid back. Be it resolved, that the directors of the Citizens' Bank of Owl do hereby execute a deed to J. W. Craine to lots 1 and 2 in block 38 in the city of Owl, Ind. Ter., for a consideration of $4,000. This deed is to be considered as a mortgage for the sum of $1,000, this amount being borrowed from said Craine for a period of sixty days at ten per cent. interest. Said Craine is to give a contract for deed to the Citizens' Bank of Owl, Ind. Ter., and said deed to be executed and delivered to said bank on the payment of the $1,000, with interest, to the said Craine by the said bank."

That a note for $1,000 and a contract were executed on the same day with the deed is clearly established. The conduct of the witness Spears is not to be easily condoned; but his testimony finds support in that of the witnesses H. W. Beard, John W. Beard, W. F. Weaver, and John Vincent, the minutes of the directors' meeting, and the other facts and circumstances surrounding and comprising the entire transaction.

That a deed absolute on its face, if given merely as security for a deed, and intended by the parties as such, will be held to be a mortgage, with the attendant right of redemption, is a rule so well established that a citation of authorities is hardly necessary. *Porter v. Clements,* 3 Ark. 364; *Johnson's Executors v. Clark,* 5 Ark. 321; *Blakemore v. Byrneside,* 7 Ark. 505; *Rushton v. McIlvene,* 88 Ark. 299, 114 S. W. 709; *Wiswell v. Simmons et al.,* 77 Kan. 622, 95 Pac. 407; *Weiseham v. Hocker,* 7 Okla.

250, 54 Pac. 464; *Balduff v. Griswold,* 9 Okla. 438, 60 Pac. 223; *Yingling v. Redwine,* 12 Okla. 64, 69 Pac. 810; *Wagg v. Herbert et al.,* 19 Okla. 525, 62 Pac. 250; 12 Cur. Law, 881; Pomeroy on Equity Jur. art. 1196; Warvelle on Vendors, p. 801; Tiffany on Real Property, art. 512.

In reaching a conclusion as to whether or not a given transaction amounts to a mortgage or a sale, the question to be ascertained is that of the real intention of the parties, either as shown on the face of the writings, or as disclosed by extraneous evidence. In the instant case, if we believe the testimony, the relation of debtor and creditor between the bank and Craine was created—not that of vendor and vendee. The subsequent conduct of the parties goes far to show that Craine understood that the deed was given only as a security for the loan of the $1,000. He made no effort to take possession of the property described in the deed until on or about November 1st following, during which time the bank collected the rent from the occupants of the building. That Craine afterwards collected the rent and asserted his rights in the premises was due, as appears from the testimony, to the fact that the bank had failed to pay the note; and that therefore he (Craine) was of the belief that he was entitled to take charge of the property and collect the rents. This conclusion is irresistible, as shown by the undisputed testimony of the witnesses Weaver and Vincent.

Among other instructions given, and to which exceptions were saved, was the following:

"If, however, you find that the deed in question, executed by the Citizens' Bank of Owl to John W. Craine, was executed for the purpose of securing an indebtedness due to said John W. Craine, but it was further understood and agreed by and between them that if the parties would repay this indebtedness within a certain length of time, and in the event of their failure to do so the deed was to become absolute, and the property was to become the property of the said John W. Craine, and you further find that the Citizens' Bank of Owl did not comply with said agreement, and did not pay the money that they borrowed or received from John W. Craine, within the time specified, then you will find in favor of the defendants for the property."

There is no testimony in the record to warrant the giving of this instruction. The transaction constituted either a sale outright of the lots, or a mortgage thereof.

A mortgage and a conditional sale differ materially; the latter is not a security for money, while the former is:

"A conditional sale is not a security for money, but is what its designation imports, namely, a sale in good faith, and a sale on condition that the vendor may repurchase on certain terms, which must be strictly complied with. Of course, therefore, no equity of redemption is incident to such a sale, because, as it is not the design of the transcription to secure the payment of money, a court of equity has no ground to say the substantial object can as well be reached by the payment at a subsequent time, with interest, as by a prompt compliance with the condition; nor does it follow that the party can thereby be put *in statu quo.*" (Minor's Institutes, art. 329.)

In Pomeroy's Equity Jurisprudence, sec. 1193, defining the difference between a mortgage and a sale with a contract to repurchase, it is said:

"This criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language they may have used, and whatever stipulations they may have inserted in the instruments. On the contrary, if no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a mere sale and contract of repurchase. The writings *may* show on their face that the relation of debtor and creditor still continues, and that its existence and consequences are contemplated by the parties; or they may entirely fail to show any such fact, and may consist simply of an absolute conveyance and of a naked agreement to reconvey. While in the former case parol evidence is clearly inadmissible to contradict the terms of the writing, and to destroy their necessary character as a mortgage, in the latter

case extrinsic parol evidence is always admissible to show the real situation of the parties, the existence of a debt, their intention to secure payment of that debt, and the actual character of the instruments as constituting a mortgage. While each case must involve its own special facts, the following. circumstances are regarded by the courts as important, and as throwing much light upon the real intent and nature of the transactions: The existence of a collateral agreement by the grantor to pay money; his liability to pay interest; where a debt existed antecedent to the conveyance, the surrender or cancellation of the evidences of such indebtedness, or the suffering them to remain outstanding and operative, or the substitution of others in their place; the price of the conveyance being inadequate; the grantor still left in possession; an application or negotiation for a loan preceding or pending the transaction."

It was said by Brewer, J., in *McNamara v. Culver*, 22 Kan. 668:

"The test is the existence or nonexistence of a debt. And equity looks behind the form to the fact. If the transaction was intended as a loan, if there remains a debt for which the conveyance is only a security, and the collection of which may be enforced independent of the security, equity will hold it a mortgage, no matter whether the transaction is evidenced by one or two instruments."

In *Fabrique v. Mining Company*, 69 Kan. 733, 77 Pac. 584, it is said, quoting from Kent's Commentaries (14th Ed.) p. 163, note "d":

."The test of the distinction is this: If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, * * * and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a reconveyance, it is a conditional sale."

It is a familiar doctrine that when the character of a mortgage attached at the commencement of the transaction, so that the instrument, whatever be its form, is regarded in equity as a mortgage, that character of mortgage must and will always continue. If the instrument is in its essence a mortgage, the parties cannot, by any stipulation, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes

belonging to a mortgage in equity. The debtor or mortgagor cannot, in the inception of the instrument, as a part of or collateral to its execution, in any manner deprive himself of his equitable right to come in after a default in paying the money at the stipulated time, and to pay the debt and interest, and thereby redeem the land from the lien and incumbrance of the mortgage. The equitable right of redemption after a default is preserved, remains in full force, and will be protected and enforced by a court of equity, no matter what stipulations the parties may have made in the original transaction, purporting to cut off this right. 3 Pom. Eq. Jur. (2d Ed.) art. 1193.

In *Stoutz v. Rouse,* 84 Ala. 309, 4 South. 170, it was said:

"A court of chancery will set aside any agreement, entered into by a mortgagor contemporaneously with the execution of the mortgage, by which he waives, unduly fetters, or agrees not to exercise his equity of redemption in event of default in the payment of the mortgage debt. And, as observed by Lord Chancellor Northington, in *Vernon v. Bethell,* 2 Eden, 110: 'There is great reason and justice in this rule, for necessitous men are not, truly speaking, free men, but to answer a present exigency will submit to any terms that the crafty may impose upon them.' The right of redemption is the creature of law, and not of contract. The parties are not, therefore, permitted by special agreement to disannex from the mortgage, at the time of its execution, that which the law has declared shall be annexed to it to prevent the undue oppression of debtors by creditors. And a like rule has been applied for similar reasons to the statutory right of redemption. *Parmer v. Parmer,* 74 Ala. 285."

In *Jackson et al. v. Lynch,* 129 Ill. 72, 21 N. E. 580, 22 N. E. 246, Schofield, J., in denying a petition for a rehearing, said:

"A court of chancery, when it ascertains that the object of a transaction is to give security for a debt, 'will always relieve the mortgagor from the consequences of his failure to perform the condition.' 2 Jones on Mortgages (2d Ed.) sec. 1039; Bispham's Eq. secs. 153, 154; 3 Pomeroy's Eq. secs. 1193, 1219. It was said in Jones on Mortgages, *ubi supra:* 'The right of redemption is the creature of the law. It is not in terms expressed by the parties in the mortgage. But whatever be the form of the transaction, if intended as a security for money, it is a mortgage, and the right of redemption attaches to it. Although a deed contain a condition that it shall be absolute and without redemp-

tion, if a certain sum be not paid by the grantor at a fixed time, and the condition is not punctually performed, there is a right of redemption.' "

In Story's Equity Jurisprudence (section 1019), the author says:

"So inseparable, indeed, is the equity of redemption from a mortgage that it cannot be disannexed, even by an express agreement of the parties. If, therefore, it should be expressly stipulated that, unless the money should be paid at a particular day, or by or to a particular person, the estate should be irredeemable, the stipulation would be utterly void."

Willard's Eq. Jur. 428; *Reed v. Reed,* 75 Me. 264; *McNees v. Swaney et al.,* 50 Mo. 388.

"The statutory right of redemption from mortgage foreclosures or execution sales is a rule of property, and cannot be impaired, after the right has accrued, even by subsequent legislation." (*Turk v. Mayberry, infra,* 121 Pac. 665.)

Continued default by the bank, after the maturity of its note, would not make the conveyance absolute, if it was in fact intended as a mortgage in the beginning. *Winsor v. Winsor,* 78 Kan. 885, 95 Pac. 1135.

In *Re Wilson et al. v. Fisher et al.,* 148 N. C. 535, 62 S. E. 622, it is said:

"This court, following an unbroken line of decisions in England and this country, has uniformly held that an agreement made at the time of the execution of the mortgage to surrender the equity of redemption for a fixed amount is invalid. The maxim 'Once a mortgage, always a mortgage,' is too deeply rooted in our jurisprudence to be brought into controversy. Ruffin, J., in *Poindexter v. McCannon,* 16 N. C. 377, [18 Am. Dec. 591], says that when, upon the face of the instrument, it is doubtful whether a transaction is a conditional sale or a mortgage, the 'court will lean to considering it a mortgage,' and will look to the 'acts of the parties and the circumstances attending the transaction.' When it is once determined to be a mortgage, all the consequences of account, redemption, and the like follow, notwithstanding any stipulation to the contrary; for the power of redemption is not lost by any hard conditions, nor shall it be fettered to any point of time not according to the course of the court. This is well expressed by the familiar maxim, 'Once a mortgage, always a mortgage.' It is well settled, upon sound

equitable principles, that contracts made at the time the mortgage is executed restricting the right to redeem, are void. 'When one borrows money upon the security of his property, he is not allowed by any form of words to preclude himself from redeeming.' Jones on Mortgages, 251. It is said: 'A man shall not have interest on his money and a collateral advantage besides for the loan of it, or clog the redemption by any by-agreement.' *Comyns v. Comyns,* 5 Irish Eq. 583. In *Broad v. Self,* 9 Jur. N. S. 885, it is held 'that a mortgagee cannot, at the time he advances his money, stipulate for his advantage that not strictly belonging to his contract of mortgage.' "

*Plummer v. Isle,* 41 Wash. 5, 82 Pac. 1009; 2 L. R. A. (N. S.) 627, 111 Am. St. Rep. 997, and cases cited in note; *State Bank v. Matthews,* 45 Neb. 659, 63 N. W. 930, 50 Am. St. Rep. 565; *First Natl. Bank v. Sargent,* 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296; *Halbert v. Turner,* 233 Ill. 531, 84 N. E. 704; *Conover v. Palmer Co.,* 60 Misc. Rep. 241, 111 N. Y. Supp. 1074, and cases cited; *Griffin et ux. v. Cooper et al.,* 73 N. J. Eq. 465, 68 Atl. 1095; *Union Trust Co. v. Gen. Elec. Co.,* 152 Mich. 568, 116 N. W. 379; *Jones v. Gillett,* 142 Iowa, 506, 118 N. W. 314.

Thus, keeping in mind the distinction between a mortgage and a conditional sale or contract to reconvey the lots in controversy, upon repayment of the loan at or before a specified time, was it proper to give the foregoing instruction? Clearly it was not; and that instead, proper exceptions being saved, the giving of said instruction constituted reversible error. There is no proof in the record that at the time of making the agreement the parties understood that, upon default in the payment of the note within the time fixed, the deed should become absolute; and it would have made no difference in law, had they so agreed. The transaction in its inception constituted a mortgage; the deed was given to secure the repayment of the loan; the loan was never paid; and the only way by which Craine or his legal representatives could obtain the complete title was by proper foreclosure proceedings. This was not done, and the bank, acting through its receiver, has invoked a proper remedy to obtain relief. Craine, having never foreclosed his mortgage, the action, in a strict sense, is not one to redeem the property, but for the cancellation of the

outstanding title, upon payment of the balance due. The rights of the mortgagor are properly governed by as liberal rules as would apply in case a foreclosure had been had, as in such case there has been no change in the title from the time of the original transaction.

The instruction complained of incorrectly stated the law, in that it directed the jury that, if the bank did not comply with the agreement and pay the money within specified time, they should find for the defendant. Had the transaction constituted a mere sale with a contract of repurchase, and had both the legal and the equitable title passed from the bank to Craine, this would, perhaps, have been a correct statement of the law; but, having found that such was not the contract, and that the intention of the parties was to arrange merely a form of security for the payment of a loan, the giving of the instruction was error, as the failure of the bank to pay within the time named, under the facts and circumstances shown by the testimony, even if proved, would not deprive the bank of its remaining title in and to the premises in question, and the attendant right to pay off and discharge the indebtedness at any time within the limit provided by law for redeeming from mortgage sale, as authorized by section 4759, Mansf. Dig. (Ind. T. Ann St. 1899, sec. 3070), at the time in force in the Indian Territory.

In considering this case, we have not deemed of importance the fact that the legal title to the lots, on June 18, 1906, was in D. A. Spears, cashier, instead of in the bank, as it was presumably considered that Spears, as cashier, held the title for the bank's use and benefit.

Because of the giving of the erroneous instruction, the judgment of the lower court should be reversed, and the cause remanded.

By the Court: It is so ordered.

All the Justices concur.