**STATE ex rel. SHULL, Bank Com'r, v. MOORE et al.**

No. 23329.   Dec. 19, 1933.

R. E. Stephenson and George L. Burke, for plaintiff in error.

L. S. Robson and C. A. Ambrister, for defendant in eror.

BUSBY, J. The principal question involved in this appeal is whether the finding of the trial court that a quitclaim deed was not given as a mortgage to secure the payment of certain indebtedness is against the clear weight of the evidence.

This action was commenced in the district court of Nowata county on January

2, 1930. The plaintiff, State of Oklahoma ex rel. C. Graves Shull, Bank Commissioner, sought to recover on behalf of the Sapulpa State Bank (a failed state bank in the process of liquidation) a money judgment against H. H. Moore, and to foreclose an alleged real estate mortgage lien claimed by the plaintiff to have been created by a quitclaim deed executed by the defendant Moore and covering certain real estate situated in Nowata county. The defendant W. M. Gibson, Jr., as liquidating agent of the Citizens State Bank of Webbers Falls (another failed state bank in the process of liquidation), claimed in his answer and cross-petition to own the property by virtue of a deed received from the defendant Moore on January 6, 1930.

The cause was tried to the court. The trial court granted the plaintiff a money judgment, but refused to declare the quitclaim deed a mortgage, and denied a foreclosure of the mortgage lien alleged to have been created thereby. The plaintiff appealed to this court and appears herein as plaintiff in error. For the sake of convenience, reference will be made to the parties as they appeared in the trial court.

A review of the transactions involved, as revealed by the record, is essential to a proper understanding of this case. In 1922 one H. A. McCauley was president of the Sapulpa State Bank of Sapulpa, Okla. He was also interested in a number of other banks in neighboring towns. including the Citizens State Bank at Webbers Falls, Okla. In addition to his banking business he was the dominating personality in McCauley & Company, a corporation. This corporation carried on a loan brokerage business. Its principal place of business was at the Sapulpa State Bank at Sapulpa.

In July, 1922, one Hutton Vore was indebted to the Sapulpa State Bank in a sum slightly in excess of $29,000. This indebtedness was evidenced by promissory notes which had been indorsed to the bank by McCauley & Company. It was secured by real estate mortgage on about 500 acres of land in Nowata county, owned by Hutton Vore. Vore was a stockman who had previously suffered financial reverses. An agreement was made between H. A. McCauley and Hutton Vore whereby, in consideration of a release from the indebtedness represented by the notes above mentioned, the latter agreed to part with the title to the real estate covered by the mortgage. McCauley, in order to carry out the agreement with Vore, caused his nephew,

one H. H. Moore. to sign and deliver to McCauley & Company accommodation notes in the sum of $29,000. These notes were executed during the latter part of July, 1922. In August. 1922, they were indorsed by McCauley & Company and delivered to the Sapulpa State Bank. They were substituted in the bank for the notes executed by Hutton Vore, which notes were transferred by the bank to McCauley & Company, which in turn delivered them to Hutton Vore. At approximately the same time, Hutton Vore executed a quitclaim deed conveying the land in question to the defendant H. H. Moore. A few days later the defendant H. H. Moore executed the quitclaim deed involved in this action, which purported on its face to convey the same property to McCauley & Company. The quitclaim deed from Vore to Moore was recorded. The quitclaim deed from Moore to McCauley & Company was not recorded. A release to the real estate mortgage previously given by Vore was subsequently executed and filed of record. McCauley & Company went into possession of the land, rented the same, and deposited the rentals in an account in the Sapulpa State Bank known as the "Vore account." The rentals were used in payment of the taxes upon the land. Moore seemed to have taken very little interest in the land. He did. however, execute some leases. It is claimed, however, that these instruments were made at the request or suggestion, either directly or indirectly, of H. A. McCauley. On this point there is some dispute in the evidence. Some time after the deed involved in this suit was executed, H. H. Moore became president of the Citizens State Bank at Webbers Falls. This bank, as we have previously observed, was one of the banks in which H. A. McCauley was interested. The Citizens State Bank at Webbers Falls and the Sapulpa State Bank at Sapulpa both failed in 1929. At the time of the failure of the banks H. H. Moore was the owner of a number of shares of stock in the Webbers Falls bank. He made an agreement with W. M. Gibson, Jr., the liquidating agent of the Webbers Falls bank, whereby in consideration of the release from a portion of his liability to the bank he agreed to deed the land in question to such liquidating agent for the benefit of the bank. In accordance with this agreement he executed and delivered to the defendant W. M. Gibson, Jr., the liquidating agent of the Webbers in question. This deed was executed on January 6, 1930. It formed the basis for

the claim of ownership asserted by the defendant Gibson in his answer and cross-petition.

In the meantime the notes executed by the defendant Moore and delivered through McCauley & Company to the Sapulpa State Bank had been renewed from time to time. Some had apparently been transferred to other banks. There remained in the Sapulpa State Bank, as a part of its assets at the time this suit was commenced, notes of H. H. Moore, evidencing an aggregate indebtedness of $20,500, together with accruing interest and attorney's fees. Part of these notes were indorsed by McCauley & Company and part of them were not. The plaintiff then commenced this action to procure a money judgment on the notes and to foreclose its alleged mortgage lien upon the real estate. An examination of the petition of the plaintiff herein discloses that plaintiff's right to impress the real estate in question with a mortgage lien was presented upon the single theory that the quitclaim deed executed by Moore to McCauley & Company in August of 1922 was intended by the parties to operate as a real estate mortgage securing the payment of the indebtedness represented by the notes. The plaintiff did not assert in the petition that, by reason of the relationship of the parties and the general character of the transactions involved, the mortgage lien of the Sapulpa State Bank previously existing by virtue of the mortgage given by Hutton Vore to secure his notes should be preserved as an equitable mortgage against the property in the hands of H. H. Moore, or his grantee, McCauley & Company. While there was considerable discussion throughout the various proceedings in this case concerning the legal problems involved, no request was ever made by the plaintiff for leave to amend its petition to incorporate this theory or any other additional or different theory than the one presented by the petition as originally filed.

The claim of the plaintiff that the quitclaim deed was a mortgage was denied by the defendants. This presented an issue which the trial court found adversely to the plaintiff.

A mortgage is incidental to the indebtedness or obligation secured thereby, it being essential to the existence of any mortgage that there be an indebtedness. 19 R. C. L. page 244, par. 7; 19 R. C. L. page 294, par. 68.

The existence of a debt in this case is not open to question. When the debt is established, the question of whether a conveyance absolute in form constitutes a mortgage depends upon the intention of the parties interested in the transaction. Section 5253, C. O. S. 1921 [O. S. 1931, sec. 9674]:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

The intention of the parties that a conveyance absolute in form shall operate as a mortgage may be ascertained from an agreement between them, or may be determined from the surrounding facts and circumstances. Regardless of the manner in which it is determined, such intention of the parties is the controlling factor in determining the true character of the instrument of conveyance. It is said by this court in the case of Haynes v. Gaines, 76 Okla. 268, 185 P. 74:

"Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test; this intention to be gathered from the circumstances attending the transaction and the conduct of the parties, as well as from the face of the written contract."

To the same effect is the earlier case of Weiseham v. Walter E. Hocker et al., 7 Okla. 250, 54 P. 464. The question of what the intention of the parties was in this case is one of fact to be determined by the trial court. The parties to this cause requested special findings of facts and conclusions of law pursuant to the provisions of section 556. C. O. S. 1921 [O. S. 1931, sec. 374]. In the finding of fact made by the trial judge it was specifically determined that the evidence was insufficient to establish an agreement between the parties that the quitclaim deed from H. H. Moore to McCauley & Company should operate as a mortgage. The trial court, however, did not make any specific finding upon the question of the intention of the parties. However, no specific request was made by the plaintiff for an additional finding on this question. Neither was an objection made and an exception taken on the theory that the findings were inadequate in that they failed to cover the controlling issue of intent. The general judgment in favor

of the defendant will, therefore, be deemed to include a specific negative finding on the question of intention to create a mortgage by the quitclaim deed. Simpson Twp. v. Hill, 40 Okla. 233, 137 P. 348.

Since this case is equitable in its nature, this court will not disturb the findings of the trial court unless the same are against the clear weight of the evidence. Haynes v. Gaines, supra; Morrison v. Krouch, 141 Okla. 288, 285 P. 10; Moorman v. Pettit, 119 Okla. 22, 248 P. 838; Mothersead v. Wiley, 114 Okla. 105, 243 P. 718.

From an examination and an analysis of the entire record, which is voluminous, we are unable to say that the findings of the trial court are against the clear weight of the evidence. H. A. McCauley died before the trial of this case, and we are without his testimony. H. H. Moore testified that the deed from Vore was given him as a consideration for the assumption of certain obligations. He also testified that the deed to McCauley & Company was executed for the single purpose of becoming effective on his death, and was not to be effective for any other purpose. This testimony directly refutes the theory that the deed was given as a mortgage. It might also be inferred from a consideration of the entire circumstances surrounding the transactions that it was the purpose of the parties that McCauley & Company should retain the land, sell it, and use the proceeds as it deemed best. It might be inferred that it was the purpose of the parties that McCauley & Company should acquire ownership of the land for the purpose of sale, intending to apply the proceeds of the sale to the payment of the indebtedness evidenced by the notes of Moore. This would not create an equitable mortgage, since the intention of the parties must be to create a lien to secure the debt as distinguished from an intention to sell certain specific property and apply the proceeds of the sale on the debt. Smith v. Rainey, 9 Ariz. 362, 83 P. 463; Hibernian Banking Association v. Chicago Title & Trust Co., 217 Ill. App. 36 (affirmed, 295 Ill. 537, 129 N. E. 540).

No useful purpose can be served by a more detailed analysis of the evidence bearing upon the question of intention of the parties. It is sufficient to observe that the evidence upon this issue is conflicting, and that conflicting inferences may be drawn therefrom. We cannot say from a consideration of the entire record of this case that the findings of the trial court are against the clear weight of the evidence.

An answer and cross-petition were filed in this case which, as amended, sought to quiet title to the land in question in the defendant W. M. Gibson, Jr., on behalf of the Citizens Bank of Webbers Falls as against the plaintiff and as against McCauley & Company, which was named as a defendant in this action. McCauley & Company was in default on March 4, 1931, and a default judgment was rendered on the answer and cross-petition of W. M. Gibson, Jr., defendant, as against that corporation. This default judgment quieted the title in the defendant and cross-petitioner, W. M. Gibson, Jr., as against McCauley & Company only. Complaint is made that no judgment could be properly rendered until the trial and determination of all the other issues in the case. In other words, the plaintiff takes the position that the cause could not be tried "piecemeal", but that all of the issues must be tried and adjudicated at the same time. Numerous authorities from other jurisdictions are cited by the plaintiff in support of this contention. In answer to the same the defendant urges that the rule announced by the authorities cited is not applicable in this jurisdiction by reason of the provisions of our statutes. Our attention is directed to section 417, O. S. 1931, providing in part as follows:

"In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper."

It is suggested that the defendant's cross-petition, asking that title be quieted as against McCauley & Company and others, was in effect an action in which a several judgment was proper, and that the right of the court to enter a default judgment against McCauley & Company and continue the trial of the cause as to other parties interested was derived from this statute. We deem it unnecessary to decide this question, for the reason that McCauley & Company is not before this court complaining of the judgment rendered, and it is obvious that the default judgment entered was not intended by the trial court to settle any issues between the parties to this appeal. An examination of the journal entry reveals, however, some language appearing therein which might be taken to preclude the plaintiff from asserting any interest in the premises (other

than an equitable mortgage) in some future action. This language reads:

"It is, therefore, ordered, adjudged, and decreed that the title and possession of said defendant W. M. Gibson, Jr., as trustee in said real estate involved in this action, be and the same is hereby settled and quieted in said defendant, W. M. Gibson, Jr., as trustee as against all claims or demands by the said defendants McCauley & Company, a corporation, and H. H. Moore, and those claiming under or through them, except the rights of the plaintiff to recover herein are not involved by the default judgment above set out."

To prevent any uncertainty in the meaning of this judgment, the judgment should be modified by substituting for the word "herein," above emphasized, the words, "In this or any other action." As so modified, the judgment of March 4, 1931, will be approved.

It appears from the record that, on a previous trial of this cause, judgment was rendered in favor of the plaintiff decreeing the quitclaim deed to be an equitable mortgage. The defendant filed a motion for a new trial, and on hearing thereof the trial court entered its order setting aside the previous judgment and granting a new trial. No appeal was taken from the order granting a new trial. The plaintiff, however, objected to the action of the trial court and excepted to the ruling, and urges on this appeal that the trial court erred in sustaining the motion for a new trial. The power to grant a new trial rests in the sound judicial discretion of the trial court, and the ruling thereon will not be disturbed by this court unless an abuse of discretion appears. Sneed v. Yarbrough, 123 Okla. 17, 253 P. 40; Mo., K. & T. R. Co. v. James, 61 Okla. 1, 159 P. 1109; Poynter v. Beacon Falls Rubber Co., 115 Okla. 245, 242 P. 563. From an examination of the record in this case, it does not appear that the trial court abused its discretion in this matter.

On the final trial of this case, the cross-petition of the defendant W. M. Gibson, Jr., was dismissed. No cross-appeal from the order of dismissal is presented herein. The trial court did not undertake in the action to quiet title to the land in question in the defendant Gibson as against the plaintiff. Indeed, after a dismissal of the cross-petition filed by the defendant Gibson, the only issues before the trial court were the existence of the alleged indebtedness and the question of whether or not the quitclaim deed was intended as a mortgage to secure the payment thereof. In the journal entry of judgment both of these issues were settled, and in addition thereto a general clause was inserted adjudging that the plaintiff had no interest whatever in the land, although there was no finding the defendant Gibson was the owner thereof. This portion of the judgment of the trial court was not within the issues as tendered by the pleadings after the dismissal of the cross-petition of Gibson, and was therefore void. Standard Savings & Loan Ass'n v. Anthony Wholesale Gro., 62 Okla. 242, 162 P. 451; Nero v. Brooks, 116 Okla. 279, 244 P. 588. It should be stricken from the journal entry. It may be that in a future action the plaintiff will claim a beneficial interest in the land on the theory of a resulting or constructive trust. Without deciding that such a suit can be successfully maintained, we do hold that such suit should not be prejudged at this time by deciding an issue not tendered by the pleadings.

The judgment of the trial court rendered on the final trial of this case should therefore be modified by striking therefrom the following language:

"It is further ordered, adjudged, and decreed by the court that the plaintiff has no right, title, or interest in the land involved in this action; to which finding and ruling of the court the plaintiff excepts."

There are other questions raised in this appeal which upon examination we find to be without merit. The judgment of the trial court of March 4, 1931, and of August 5, 1931, will be modified in accordance with the views herein expressed, and as so modified will be affirmed.

CULLISON. V. C. J., and ANDREWS, McNEILL, and OSBORN. JJ., concur. RILEY. C. J.. and SWINDALL and WELCH, JJ., absent. BAYLESS, J., disqualified.