MILLER et al. v. BUSH et al.

No. 33173.   July 9, 1948.

*196 P. 2d 692.*

John W. Mee, of Oklahoma City, for plaintiffs in error.

Primus C. Wade, of Tulsa, for defendants in error.

LUTTRELL, J. This is an appeal by Willie Miller and Jimmie Miller, defendants in the trial court, from a judgment rendered by the trial court in favor of plaintiff Dimple L. Bush and other parties, in which judgment the trial court held that a warranty deed, executed by Dimple L. Bush and her deceased husband to Willie Miller and her deceased husband, was a mortgage.

The sole question presented is the sufficiency of the evidence to sustain the judgment.

The warranty deed was executed and delivered on July 20, 1937, by John W. Bush and Dimple L. Bush, husband and wife, to John E. Miller and Willie Miller, husband and wife, and conveyed to the Millers the home of the grantors in Tulsa, subject to a life estate reserved by the grantors and the survivor of them, and subject also to the following condition:

" . . . that upon the failure of the said second parties to pay all taxes, assessments, liens and other charges for which the above described property is legally liable, then and in that event, said parties of the first part, or the one surviving the other shall have the right to have this conveyance set aside, vacated and held for naught, . . ."

At the same time and as part of the same transaction, the parties executed an "agreement and stipulation" in which the first parties, John W. Bush and Dimple L. Bush, recited that due to the depression, and the inability of the first parties to make payments of taxes assessed against the property, and monthly payments upon a $4,400 mortgage against it, it was agreed that if at any time thereafter they were unable to pay taxes and mortgage payments in whole or in part, second parties, the Millers, upon being advised of such inability, would make such payments in whole or in part as the case might be, until such time as first parties became financially able to make them, and that if and when such condition recurred the obligation to make such payments would again devolve upon second parties. The agreement recited that the first parties desired to maintain and possess said property during their natural lifetime as their homestead, and to preserve the same from total loss or deprivation by reason of the disability of first parties, or any unavoidable casualty preventing them from making the payments. The agreement referred to the warranty deed made, executed, and delivered by first parties to second parties, and stated that the agreement was a condition or exception incident to such deed. Both

the deed and the agreement provided that if the Millers failed to carry out the obligations imposed upon them thereby, the grantors, first parties in the agreement, should have the right to have the deed and agreement vacated, set aside and held for naught. Both the deed and agreement were duly recorded in Tulsa county.

John W. Bush was the husband of plaintiff, Dimple L. Bush, and John E. Miller was her son by a former husband, there being no children born to John W. Bush and Dimple L. Bush. After the death of her husband and her son, plaintiff brought this action seeking, among other things, to have the deed and agreement above referred to decreed to be a mortgage. The defendants, by answer and cross-petition, asserted title to the property under the terms of the deed and agreement aforesaid; alleged that the obligations assumed by John E. Miller and Willie Miller in the said deed and agreement had at all times been carried out; asked that they be decreed to be the sole heirs of John E. Miller, deceased, and the owners of the property subject to the life estate reserved by plaintiff, and subject to their future compliance with the conditions specified in the said agreement. The trial court held that the deed and agreement constituted a mortgage, and denied any relief to defendants under their answer and cross-petition.

Plaintiff Dimple L. Bush was the sole witness who testified in her behalf. She testified that she was an educated woman, having graduated from high school and attended Ohio State University for two years; that at the time the deed and agreement were executed she was sick and her husband was in bad health, and that they were unable to pay the taxes and payments on the mortgage out of the amount earned by her husband as a waiter at the Tulsa Club; that she did not know who prepared the deed and agreement, but that the same was presented to her for her signature at a conference between her and her husband and the Millers; that her husband and son both stated to her that it was a second mortgage to secure the sum of $200, which was paid by her son to her husband at that time, and that upon such assurance she signed the papers without reading them. She testified that she had continued to occupy the property and at all times thereafter had made the payments upon the mortgage and paid the taxes thereon. She denied having received any further assistance from the Millers, but upon being confronted with a letter showing that she had received from them an additional $40, which she had applied upon the property, she admitted the receipt of said sum, but testified that she and her son frequently advanced money to each other when necessary and that that would account for the receipt of such payment. She did not testify that at the conference attended by her, or at any other time, there was any agreement to repay the sum of $200 that day paid, or that any rate of interest was fixed to be paid for the use of such money, or that any agreement was had that upon the repayment of the sum the grantees in the deed would reconvey the property. No note or other evidence of the debt was executed.

Defendant Willie L. Miller testified that at on time during the negotiations was anything said about repayment of the said $200, and this statement was not denied by plaintiff. Willie Miller further testified that she and her husband executed and acknowledged the papers in the office of plaintiff's attorney, and that they came from their home in Oklahoma City to Tulsa in response to a telephone call from such attorney. She also testified that subsequently, on three different occasions, she or her husband advanced to the plaintiff other sums aggregating in all $120 to be applied upon either taxes or payments on the place. She testified that she did not know who drew the deed and agreement, but that they were discussed by the four parties in the home of plaintiff, and that all parties

knew and understood the nature of the transaction and the obligations imposed upon the grantees in said deed by the deed and agreement.

Plaintiff admitted that at the time the deed and agreement were executed she and her husband were behind in their payments to the mortgagee, and were unable to pay the taxes, and that she and her husband were both worried about the possibility of losing their home, her husband being especially worried about the condition of the taxes. She testified that in 1944 she came to the home of defendant Willie Miller and requested to be advised of the amount owing to Willie Miller so that she could pay it off and receive a reconveyance of the property, and that she then for the first time learned that Willie Miller claimed ownership of the property by virtue of the deed.

We have in numerous cases held that whether a deed absolute in form was in fact a mortgage depended upon whether or not the transaction was intended to be a loan, and that the decisive question was whether there was a debt for which the conveyance was only a security, and the collection of which could be enforced independently of the security. McKean v. McLeod, 81 Okla. 77, 196 P. 935; Voris v. Robbins, 52 Okla. 671, 153 P. 120; Edmundson v. State, 181 Okla. 150, 73 P. 2d 150; Renas v. Green, 88 Okla. 169, 212 P. 755.

We have also held that the burden of proving that the deed was intended to operate as a mortgage was upon the party asserting it to be a mortgage, and that to establish its character as a mortgage the evidence must be clear, unequivocal and convincing. Renas v. Green, supra; Holly v. Holly, 174 Okla. 626, 51 P. 2d 527; Villines v. Conatser, 151 Okla. 144, 2 P. 2d 1024.·

And in Haynes v. Gaines, 76 Okla. 268, 185 P. 74, and State v. Moore, 167 Okla. 28, 27 P. 2d 1048, we held that the intention of the parties was to be gathered from the circumstances attending the transaction and the conduct of the parties as well as from the face of the written instruments.

Measured by these rules, we think the evidence of plaintiff failed to establish that the deed and agreement were intended to be a mortgage. Plaintiff does not contend that any fraud or deception was practiced upon her, or that there was any agreement when and how the sums advanced should be repaid, or that her illness at the time was so serious that she was unable to read the instruments and understand their contents. Her sole statement in this respect was that her husband and son told her the instruments were a mortgage and that she relied upon that statement and did not read them. Their form was such that even a casual inspection to a woman of her intelligence and education would have disclosed their true nature. Her statement is not supported by any fact or circumstance in the case or by the testimony of any other witness. Her own evidence establishes that at the time the instruments were executed she and her husband were fearful of losing the home, and were desirous of taking steps to assure themselves of the right to occupy it peaceably and undisturbed during the remainder of their lives. When we consider the fact that the instruments were executed by her husband and son and were acknowledged in the office of her attorney, it seems unbelievable that she was not advised of the nature and effect of the instruments by one of those parties. So far as the evidence shows, none of the parties had the slightest reason to conceal the true nature of the transaction from her. She and her husband were deeply concerned about the possibility of losing their home; she was on friendly terms with her son, and if, as she testified, she advanced him money when he needed it, and he did the same when she needed it, there would be no reason for the execution of the instruments as security for a loan. The fact that she understood the nature of the transaction was evidenced by the subsequent receipt by her of ad-

ditional sums from the Millers to assist in keeping up taxes and mortgage payments on the property. Evidence as to such payments was evidently believed by the trial court, since he allowed recovery of the sums in the judgment, and gave the defendants a lien upon the property for the repayment thereof. The judgment of the trial court was clearly against the weight of the evidence.

Reversed, with directions to enter judgment for defendants, Willie Miller and Jimmie Miller, against the plaintiff and the other defendants in the action as prayed for in the answer and cross-petition of defendants.

HURST, C. J., DAVISON, V. C. J., and WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.