Dean JONES, d/b/a Dean Jones,
Contractor, Plaintiff-Appellee,

v.

UNITED STATES FIDELITY AND
GUARANTY COMPANY, M. R.
Wilmot, Defendants,

J. R. Adams, Inc., Defendant-Appellee.

Appeal of CORDELL NATIONAL BANK,
a National Banking Association, Defendant-Appellant.

No. 51284.

Court of Appeals of Oklahoma,
Division No. 2.

Nov. 7, 1978.

Rehearing Denied Dec. 5, 1978.

Released for Publication by Order of
Court of Appeals Dec. 29, 1978.

Dwight W. Birdwell, Looney, Nichols, Johnson & Hays, Oklahoma City, for plaintiff-appellee.

Bryan L. Wright, Wright, Dale & Jett, Guymon, for defendant-appellee.

Jones & Jones, Cordell, Andrew J. Haswell, Oklahoma City, for defendant-appellant.

BRIGHTMIRE, Judge.

This is the fourth time this case has been before an appellate court. The first appeal[1] was prosecuted by appellee J. R. Adams, Inc. from a 1971 judgment resulting in a reversal as to it by this court.

The second one[2] was by appellant Cordell National Bank to require the trial court to enter a certain kind of judgment and was dismissed after the high court informed the bank that a petition for a writ of mandamus was the appropriate way to seek the relief desired.

The third appellate proceeding[3] was an original action in the Oklahoma Supreme Court by the bank seeking a writ of mandamus directing the trial court to give force and effect to all adjudications made in the original decree, save as to Adams, and requiring the trial court to make findings of facts regarding issues not raised at trial. The high court assumed original jurisdiction and directed the trial court to enforce his original judgment except as modified by the Court of Appeals but declined to require him to make an additional finding or enter any additional judgments.

This fourth appeal is also by the bank. According to its petition in error it is "from a final decision consisting of a Journal Entry of Judgment entered July 12, 1977 . . . [and] is based upon the failure of such journal entry to comply with the mandate of the Oklahoma Supreme Court issued November 16, 1976 in [Sup.Ct.] No. 50,192 . . . that the District Court give full force and effect to all original judgments . . . [and] by awarding prejudgment interest . . . ."

I

Fortunately, it is not necessary to detail the lengthy and involved operative facts of the original dispute. The ones relevant to the litigational history begin with the judgment rendered April 16, 1971 for it forms the foundation of the bank's present complaint. In it the court made the following adjudications:

1. Granted plaintiff Jones a judgment against defendants USF&G, Adams and Wilmot for $4,512.10.

2. Adjudged same three defendants to be jointly and severally obligated to indemnify plaintiff for payments he made for labor and material furnished for completion of certain construction contracts including payment of a $20,000 promissory note held by Cordell National Bank the

---

1. No. 44,999 (Okl.App. May 22, 1973).

2. No. 47,278 (Okl. Feb. 2, 1976).

3. No. 50,192 (Okl. Nov. 16, 1976).

proceeds of which were used to pay a supplier.

3. Gave plaintiff Jones judgment against the same three defendants "for the full amount of any payment Plaintiff Dean Jones may be required to make to Cordell National Bank hereunder."

4. Gave defendant bank judgment against defendant Wilmot and plaintiff Jones on a note for $2,719.14 principal, $3,509.88 interest, $350 attorney's fee and costs.

In its appeal Adams contended that the trial judge erroneously refused to grant it a judgment against the bank for $28,705.65, the amount Adams alleged the bank wrongfully withheld from it. The Court of Appeals reviewed the matter, reversed the holding as it related to Adams' complaint, "and remanded with instructions to enter judgment . . ." in favor of Adams against the bank for $28,705.65.

In accordance with the Oklahoma Supreme Court mandate ordering implementation of all the original judgments and the decision of the Oklahoma Court of Appeals, the trial court on July 12, 1977 signed a third journal entry[4] which contained the same judgments as the first one save that two more adjudications were added, namely:

5. Adams was awarded judgment against the bank for $28,705.65 with interest from the 10th day of June 1967 at the rate of six percent per annum to May 22, 1973 [$10,262.40] and interest on $38,-968.05 from May 22, 1973 at the rate of 10 percent until paid.

6. "[A]ll other motions pending, including Adams' motion to add interest to the judgment and Cordell National Bank's motion for additional filings [findings?] and relief set forth in their response to settle journal entry are overruled."

Before this journal entry was signed, however, the bank filed a motion assailing it and asking leave to file a response with respect to settling the journal entry which contained this mysterious declaration:

"Under Supreme Court decision, this court has the right to make additional findings and conclusions with respect to the case and it is necessary that the court clearly rule what issues between the parties are determined by the final journal entry and what issues are not determined by the judgment."

In its response the bank requested "that the Journal Entry and Judgment in the 1971 Journal Entry be retained in its original form with the addition of the following . . . :

'IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that J. R. Adams, Inc. shall have judgment in this action against Cordell National Bank for $28,705.65 and Cordell National Bank shall have a judgment in this action against plaintiff Dean Jones in an identical amount and plaintiff Dean Jones shall have a judgment in this action against M. R. Wilmot and J. R. Adams, Inc. jointly and severally in an identical amount and all of said three judgments shall be merged and offset each other.'"

It is from the court's refusal to enter such a "perfect circle" judgment and his awarding of prejudgment interest to Adams on the $28,705.65 judgment that the bank appeals. Its contention is that in both instances the court failed to comply with mandate of the Oklahoma Supreme Court in the mandamus action.

## II

The bank's first two propositions are related and in essence contend that the 1977 journal entry fails "to implement the following original judgments" rendered in the 1971 decree, namely: "Wilmot's indebtedness was guaranteed by Jones; Wilmot had a half interest in water district contract proceeds; Jones is entitled to a judgment against Adams, Inc., for amounts Jones must pay the bank under the journal en-

---

4. The second journal entry was signed on February 1, 1974 and contained only the judgment for Adams against the bank. On the basis of

this judgment the bank sought a writ of mandamus from the Oklahoma Supreme Court.

try;" when these "judgments" are given "full force and effect . . . the journal entry should grant a judgment to the bank against Jones [for $28,705.65], a judgment to Jones against Adams, Inc., [for $28,-705.65], and a judgment to Adams, Inc., against the bank, [for $28,705.65] . . ."

■ The short answer to this thesis is that no such "judgments" were ever entered. Mere findings of fact do not rise to the dignity of judgments. *Davis v. Baum,* 192 Okl. 85, 133 P.2d 889 (1943). Consequently, in order for the trial court to comply with the bank's request, he would have had to render two entirely new judgments granting unprayed-for relief and predicate them on factual issues not raised by the pleadings. This, of course, is not what was "mandated" by the supreme court. The trial court was not commanded to "consider any additional fact question" but only "to give full force and effect to all the original *judgments,*" and to grant one to Adams as directed by the court of appeals (emphasis added).

■ This is precisely what the trial court did in the 1977 journal entry. While the writ of mandamus did not specifically enjoin the trial court from finding additional facts or from rendering new judgments, it would have been error for the judge to yield to the bank's entreaty for at least two reasons. First of all, the 1971 judgment was and remained a final determination of the rights of the parties in this action subject only to the appellate disposition of Adams' appeal. Secondly, the judgment the bank is seeking could not have been validly rendered even back in 1971 because the only relief asked for in its cross-petition was a $2,794.14 balance due on a $20,000 note executed by Jones, Adams and Wilmot in September 1967—relief which was granted in both the 1971 and 1977 journal entries. A "judgment or any portion thereof deciding an issue not tendered by the pleadings is void." *State ex rel. Shull, Bank Com'r. v. Moore,* 167 Okl. 28, 27 P.2d 1048 (1933); *accord, LaBellman v. Gleason & Sanders, Inc.,* Okl., 418 P.2d 949 (1966).

## III

The bank's third complaint—that the trial court awarded prejudgment interest in disregard of the supreme court's mandate—is likewise without merit.

In making the award the court relied upon authority granted in 23 O.S.1971 § 64(1) which statutorily presumes "the detriment caused by the wrongful [*sic*] conversion of personal property" to be, among other things, the "value of the property at the time of the conversion with the interest from that time."

The bank's argument is that § 64(1), in establishing presumptions with reference to damages, cannot be considered as statutory authority that prejudgment interest is recoverable as a matter of right. Moreover, continues the bank, the converter is privileged to rebut the presumption "by mitigating defenses, such as good faith," with the single exception made in § 65—that return of the property shall not repel the presumption. The result, concludes the bank, is that § 64(1) merely means that under certain circumstances the court may allow prejudgment interest and since the propriety of awarding it in this case was not an issue raised or tried in 1971, it was too late to try it in 1977.

■ This tenuous construct tortures the intellect. The only factual foundation required for the invocation of § 64(1) is the two-fold determination of whether the personal property was converted and, if so, its value—determinants made by this court in an earlier appeal. Once these facts were established the statute took over and obviated the necessity of further proof or fact-finding by presuming the detriment of the injured party to be the "value of the property at the time of the conversion with the interest from that time . . . ."

■ Whether this presumption is a rebuttable one need not be decided here, because if it is we hold it cannot be overthrown by a showing that the conversion was in "good faith" or by what the bank obscurely refers to as "mitigating defenses." Section 64 is more of a definitional statute than a permissive one and is de-

signed to augment 23 O.S.1971 § 61, authorizing recovery of damages from a tort-feasor in an "amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not." The fact that the bank may have converted Adams' property in "good faith" is not a defense to the wrongful act, mitigationally or otherwise. The allowance of interest is not for punishment but compensation for one form of detriment—loss of use of the property. Since 15 O.S.1971 § 266 fixes the rate of six percent per annum, the only thing left for the court to do was a little arithmetic, which he did.

### IV

■ Adams asks us to award it "fair compensation for the time and money properly expended in pursuit of the property" as authorized by § 64(3). We decline to do this. No finding has ever been made by the trial court as to such detriment, presumably because no evidence was adduced upon which to base such a finding, and, of course, no judgment was rendered regarding it.

The judgment of July 12, 1977 is affirmed.

NEPTUNE, P. J., and BACON, J., concur.