**REPUBLIC FINANCIAL CORPORATION, an Oklahoma Corporation, Appellee,**

v.

**Jerry L. MIZE and Carole N. Mize, husband and wife, Appellants.**

**No. 56454.**

Supreme Court of Oklahoma.

Nov. 15, 1983.

As Corrected Dec. 12, 1983.

Rehearing Denied April 27, 1984.

Donald E. Herrold, Jack N. Herrold, Legal Intern, Morrel, Herrold, West, Hodgson, Shelton & Striplin, P.A., Tulsa, Robert P. Kelly, Kelly & Gambill, Pawhuska, for appellants.

Timothy J. Sullivan, Prichard, Norman, & Wohlgemuth, Tulsa, for appellee.

ALMA WILSON, Justice.

This case arose as an action to quiet title and to cancel a contract for the sale of real estate brought by a finance company, Republic, against Jerry and Carole Mize. Judgment was granted for Republic and later affirmed by the Court of Appeals. Republic prevailed on the theory that it had acquired legal title to the property in question through an absolute conveyance by quit claim deed, characterizing this transaction as a deed in lieu of foreclosure rather than a mortgage.

The record below shows that in January, 1979, the Mizes obtained a loan from Republic for $162,145.75 secured by a second mortgage against their ranch. An exhibit shows that at that time the ranch had been appraised in excess of four million dollars. When the first mortgage holder, Equitable, began foreclosure proceedings, Mize and Republic entered into a financial arrangement to prevent foreclosure. The three instruments used to effectuate the agreement were a Voluntary Surrender Agreement, a Quit Claim Deed, and a Contract for the Sale of Real Estate. Under the agreement negotiated among Republic, Mize, and Equitable, Mize deeded the ranch to Republic, Republic advanced $250,000 to Equitable to reinstate the first mortgage and assumed the remaining balance on the first mortgage of $1,216,000. Equitable later agreed to allow Republic to limit its liability on assumption of the first mortgage to $160,000 because of the effect such direct liability would have on Republic's financial statement. The Mizes were not

released from either their first or second mortgage.

The Voluntary Surrender Agreement, made November 6, 1979, contemporaneously with the quit claim deed, recited that Mize was indebted to Republic in the original sum of $162,145.75, constituting the second mortgage on the property upon which a foreclosure action had been filed on the first mortgage. It further recited that in an effort to resolve Equitable's foreclosure action, Mize agreed to quit claim the ranch to Republic. Republic agreed then to bring current and to assume the first mortgage indebtedness of Equitable. The agreement specified that the transfer of title to Republic was not intended to merge Republic's second mortgage on the property with the title, but was intended solely to permit Republic to satisfy the first mortgage indebtedness and second mortgage indebtedness to the extent possible. Under the agreement Mize was given the right to repurchase the property under the terms of the contract for sale attached and incorporated by reference to the Voluntary Surrender Agreement. The parties further agreed that neither the voluntary surrender agreement, nor the quit claim deed shall be construed to release Mize from any deficiency should Republic sell the property to a third party in order to reduce the indebtedness of Mize to Republic.

In the contract for sale, entered on the same day, it was provided that Mize agreed to pay taxes and insurance in return for immediate possession of the ranch from the date of the agreement to the date of closing. The repurchase was to occur on or before March 5, 1980, with the repurchase price set at $1,807,042. In the event Equitable allowed Mize to assume the first mortgage and release Republic, the purchase price would be set at $591,042. This price included the amount owed on the original note plus accrued interest, Republic's advances to Equitable plus accrued interest, and a $50,000 loan fee plus accrued interest. The contract allowed Mize to assign his rights thereunder. If Equitable did not allow Mize to assume then Mize was to pay Republic $591,042, plus the amount necessary to pay in full the principal and interest balance on Equitable mortgage.

Mize failed to comply with this condition and Republic paid $52,000 for insurance, taxes, utilities, and other expenses relating to the operation of the ranch from November 6, 1979, (date of the agreement) to October 31, 1980 (date of the trial). Mize recorded an affidavit with the County Clerk in Osage County in January, 1980, claiming an equitable interest in the ranch arising from the sales contract.

On March 5, 1980 (the deadline for repurchase), Mize delivered to Republic a copy of a sales contract which provided for the sale of the ranch from the Mizes to the Reeds (co-defendants). The contract specified no closing date and provided for immediate possession by the Reeds. The Reeds filed an affidavit with the County Clerk reciting rights to acquire and possess the ranch under the contract with the Mizes.

Republic brought this action against the Mizes and the Reeds claiming Mize breached the contract to purchase and asked the court to declare the contract null and void and to quiet its title. It also sought possession of the ranch and damages for wrongful detainer. Prior to trial, Republic amended its petition and asked only for cancellation of the contract and to quiet title. The defendants, Mize and Reed, demurred to the petition on the ground that a quiet title action may not be maintained by one not in possession unless joined with an action for possession. The demurrer was overruled. The defendants answered raising the defense that the deed though absolute on its face was in reality a mortgage. They also cross-petitioned for damages for the tort of intentional interference with contract rights.

Prior to trial, the court overruled the defendant's motion in limine which sought to limit the documentary evidence to the three agreements of November 6, 1979.

The evidence at trial included testimony of officers of Republic, an attorney for

Equitable, deposition testimony of Jerry Mize, and numerous documentary exhibits. Mize was unable to appear at trial. His deposition was introduced to demonstrate that it was his intent to convey full legal title to Republic. In the deposition he stated that it was his intention to sign a deed and that he understood Republic would take title to the ranch as part of the arrangement.

Republic's president, Ronald Skyles, stated in deposed testimony that when Republic held a second mortgage and the first mortgage was in default, its practice was to bring the payments up to date on the first mortgage and keep them current until Republic could complete its foreclosure in an effort to preserve the second mortgage.

Ronald Reed, co-defendant with Mize, offered to pay $720,388.90 to Republic at trial. This amount equalled the total amount due Republic as of the date of the trial. Reed, however, had not then completed his financial arrangements for the full amount.

The trial court found Mize had breached the option to purchase contract and Republic was therefore entitled to cancellation and rescission. The court also determined that the parties had intended the deed to be an absolute conveyance and not mere security for the debt. The defendants had the burden of proving the deed was a mortgage by clear and convincing evidence. *See, Beverly Hills Nat. Bank & Trust Co. v. Martin,* 185 Okl. 254, 91 P.2d 94 (1939). The court concluded that they failed to satisfy this burden.

The Court of Appeals found that Republic had properly maintained the action for quiet title, even though not joined with the action for possession, since part of the relief sought—cancellation of the contract—was equitable in nature. It held that the trial court did not improperly deny Mize's right to a jury trial by eliminating the need for the action for possession, because the case was otherwise equitable in nature. The Court of Appeals found no error in the trial court's refusal to grant the defendant's motion in limine made to prevent Re-

public from submitting any evidence tending to vary the terms of the three written instruments. The court found that the evidence in question did not vary the terms of the written agreement. The court concluded: "We find no error in the trial court's exclusion of such evidence." The court probably meant to use the word *inclusion* rather than *exclusion* otherwise it does not make sense as no evidence was excluded.

On the deed/mortgage issue the Court of Appeals found that the trial court's finding of a deed rather than a mortgage was supported by the evidence. The Court of Appeals seemed to rely heavily on the deposition testimony of Jerry Mize, as did the trial court, in reaching its conclusion that the deed was not a mortgage. The court saw the issue as strictly an intent of the parties problem—an issue of fact to be determined by the trial court which it would not disturb unless clearly against the weight of the evidence.

I

■ The first issue is whether the trial court erred in allowing a plaintiff out of possession to proceed with an action to quiet title and cancel a real estate sale contract without joining an action for possession.

The appellants claim that an action for quiet title must be joined with a prayer for possession if brought by one out of possession. They base this claim on 12 O.S.1981, § 1141, and numerous case authorities. There is, however, some authority for the appellee's position that an action for possession is not necessary where the plaintiff asks for some equitable relief in addition to quieting title. In this case Republic joined an action for cancellation of a contract with its quiet title action. Republic's contention is that the action is basically equitable with the quieting of its title being merely incidental to the equitable action of cancellation.

Title 12 O.S. § 1141, provides in pertinent part:

"An action may be brought by any person, by himself or tenant, of real property against any person who claims an estate or any interest therein adverse to him for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession...."

■ Based on 12 O.S. § 1141, this Court in *Hale v. Hall*, 383 P.2d 653 (Okl. 1963), applied the rule that an action to quiet title by one out of possession will not lie unless joined with an action to recover possession. However, while equity will not as a rule entertain a suit to quiet title in favor of one asserting a legal right when he is not in possession, if he shows some special equity, some impediment to the assertion of his rights at law, as exists on the case of a remainderman, a suit to quiet title may be maintained independently of possession. *Marshall v. Ward*, 167 Okl. 183, 28 P.2d 1091 (1934). In *Marshall*, a remainderman sued to quiet title against a life estate holder who was claiming a fee simple interest. There it was held that a suit to remove a cloud from the title could be maintained under the doctrine of equity jurisprudence and did not depend upon the statute authorizing an action by one in possession. The reason behind the possession rule is that one out of possession has an adequate remedy at law by a suit in ejectment. However, where a legal remedy is not available, as in the case of a remainderman who has no current right to possess, the rule has no application and a court of equity may entertain jurisdiction.

Here, Republic argues that cancellation of an instrument is not available at law so a legal remedy would not be adequate. It contends that the essence of the action is cancellation of the sales contract and that the quiet title action is only "incidental". In *Randolph v. Mullen*, 73 Okl. 199, 175 P. 512 (1918), the plaintiff and the defendant both had deeds to the same property. The plaintiff brought the action to have the defendant's deed and record cancelled. There it was held that in an action for cancellation of instruments affecting title to land it was not necessary for the plaintiff to be in possession. The Court found the action to be primarily one for cancellation and quieted the title as an incident to the relief granted.

An annotation on this subject appears in 117 A.L.R. 9; we quote with approval the following language at p. 43:

"Other equitable relief sought in connection with the quieting of title may, under the circumstances render the suit substantially equitable in character, so that, although the defendant is in possession, the parties will not be entitled as of right to a jury trial. Furthermore, a suit may be primarily one to obtain special equitable relief to set aside instruments or obtain rescission, etc., to which a prayer for the quieting of title is merely incidental."

In the Court-authored syllabus of *Walden v. Potts*, 97 Okl. 24, 222 P. 549 (Okl.1924), it was stated that a suit brought for the primary purpose of cancelling instruments and to quiet title is purely of equitable cognizance, and presents questions for the determination of a chancellor.

■ In support of their argument that they had a right to a jury trial, the appellants cite 12 O.S.1981, § 556, which provides that issues of fact arising in actions for recovery of money, or of specific real or personal property shall be tried to a jury. The paramount issue formed by the pleadings in this case were issues of law and were equitable in nature. The central substantive issue in the case turned on the defense that the deed was really a mortgage, a determination of equitable cognizance. *Hamilton v. Harrington*, 112 Okl. 79, 239 P. 618 (Okl.1925). We therefore find that the trial court did not err in bifurcating the proceedings and trying the equitable issues first.

II

The next question is whether extrinsic evidence bearing on the parties' intent should have been admitted on the issue of whether the deed was in fact a mortgage.

The appellants claim that the trial court erroneously admitted extrinsic evidence to prove that the deed was not a mortgage. The extrinsic evidence admitted by the trial court which proved to be most damaging to the defendants was the deposition of Jerry Mize. In this deposition, Mize answered questions pertaining to his understanding of the legal significance of the deed given to Republic. He stated that he understood that Republic had title to the land and would be able to sell it if he did not repurchase. He also stated that when he signed the deed it was his intention to sign a deed, and not a mortgage. Republic also used the fact that the Mizes filed an affidavit with the county clerk claiming an equitable interest in the land as evidence that the Mizes understood that Republic had legal title. It additionally relied on the proposed contract for sale of real property between the Mizes and Reeds which included the following language: "Whereas, Republic holds legal title in and to a certain tract or parcel of real property located...."

We refer to *Worley v. Carter*, 30 Okl. 642, 121 P. 669 (Okl.1912), where we cited Pomeroy's Equity Jurisprudence § 1193 on the issue of whether parol evidence is admissible in deciding the mortgage/deed controversy:

> The writings may show on their face that the relation of debtor and creditor still continues, and that its existence and consequences are contemplated by the parties; or they may entirely fail to show any such fact and may consist simply of an absolute conveyance and of a naked agreement to reconvey. While in the former case parol evidence is clearly inadmissible to contradict the terms of the writing, and to destroy their necessary character as a mortgage, in the latter case extrinsic parol evidence is always admissible to show the real situation of the parties, the existence of a debt, their intention to secure payment of that debt, and the actual character of the instruments as constituting a mortgage.

In Jones, Mortgages of Real Property § 328, the rule is stated as follows:

> "But if the instrument on its face be a mortgage, or if a deed and a bond of defeasance be executed together as part of the same transaction, and therefore constitute a mortgage, parol evidence is not admissible to show that the parties intended that the transaction should operate as a conditional sale."

The apparent purpose of the transaction including Deed, Voluntary Surrender Agreement, and Contract for the Sale of Real Estate, was to arrange financing for Mize and thereby protect Republic's interest from Equitable's foreclosure action. While extrinsic evidence is admissible to show that a deed is in fact a mortgage, it is not admissible to destroy the writings' necessary character as a mortgage where the agreement is clearly one to secure the payment of money. In this case the three instruments indicate on their face a mortgage and extrinsic evidence should not have been admitted to illustrate that an absolute conveyance was intended.

### III

The final issue is whether the evidence including the Deed, Voluntary Surrender Agreement, and the Contract for the Sale of Real Estate, supported the trial court's finding of a deed rather than a mortgage.

Applicable statutory authority is found in 46 O.S.1981, § 1, which provides:

> "Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

The appellants rely principally on the *Worley* case, *supra,* to support their argument that the deed was in fact a mortgage. This Court in *Worley* stated that if there remains a debt for which the conveyance was only a security, and the collection of which may be enforced independently of the security, the whole transaction

amounts to a mortgage, whatever language the parties may have used in expressing their agreement. Under the agreement between Mize and Republic, Mize was not released from his original $162,145 loan debt to Republic nor from the first mortgage. The Voluntary Surrender Agreement provided that the deed would not operate to merge Republic's second mortgage on the property and the title thereto. The agreement also provided that Mize was not released from any deficiency existing should Republic sell the property to a third party in order to reduce the indebtedness of Mize to Republic. It was therefore clearly expressed on the face of the agreement that the debtor-creditor relationship continued after the deed was executed.

The general rule is stated in *Davis v. Moore*, 387 P.2d 483 (Okl.1963), as:

"Whether a deed absolute in form is in fact a mortgage depends upon whether or not the transaction was intended to be a loan, and the decisive question is whether there was a debt for which the conveyance was only a security and collection of which could be enforced independently of the security."

In *Miller v. Bush*, 200 Okl. 465, 196 P.2d 692 (1948), it was held that in determining whether a conveyance can be declared to be an equitable mortgage, the test is the existence or nonexistence of a debt, and if there is a debt for which conveyance is only security, and collection of which may be enforced, equity will hold the conveyance to be a mortgage. *Accord, Beindorf v. Thorpe*, 90 Okl. 191, 203 P. 475 (1921); *Messner v. Carroll*, 60 Okl. 90, 159 P. 362 (1916).

It was concluded in *Beindorf, supra,* 203 P. at 477, that the great weight of authority supports the rule that an absolute deed, with a covenant by the grantee that he is to reconvey upon the repayment of a certain sum of money, with interest, within a specified time, or an absolute deed, executed together with a separate instrument, of even date, wherein the grantee agrees to reconvey upon the payment of a certain

sum of money within a specified time, constitutes the deed a mortgage. In this case, the consideration for the deed was Republic's assumption of the first mortgage and payments by Republic to reinstate the first mortgage. Under the terms of a contemporaneous agreement, Mize would be able to repurchase the property for a price which equalled the amount Mize owed Republic plus interest. This rather clearly points to the deed being a security for indebtedness rather than an absolute conveyance.

In addition to the existence of a debt, there are other factors a court will look to in deciding whether a deed is actually a mortgage. A number of these factors were spelled out in *Worley, supra:*

(1) existence of collateral agreement by grantor to pay money; (2) liability to pay interest; (3) where a debt existed antecedent to the conveyance, the surrender or cancellation of evidence of such indebtedness or the suffering of them to remain outstanding; (4) price of conveyance being inadequate; (5) grantor remains in possession; and (6) application for loan preceding or pending the transaction.

Applying these factors, first, the contract for sale provided a repurchase price equal to the debt owed Republic, and the Voluntary Surrender Agreement made Mize liable for any deficiency should Republic sell the property after March 5, 1980. Second, the purchase price under the contract for sale to Mize included interest. Third, Mize continued to be indebted to Republic; Mize's note was neither cancelled nor surrendered, and the mortgages were not released. Fourth, at the time the second mortgage was made, an inter-office memorandum of Republic reflected that an independent appraiser had appraised the ranch to have a fair market value in excess of four million dollars. Further, Ronald Skyles, president of Republic, testified that in his opinion Mize's ranch was worth $3 million, and that Republic was able to buy the property for about $1,200,000 below his estimated value. Even if Republic's as-

sumption of the first mortgage be included, Republic's cost is less than two million dollars. Fifth, Mize retained possession. And sixth, Mize and Republic were in a mortgagor-mortgagee relationship prior to the execution of the deed.

We quote further language in Pomeroy found at § 1195 distinguishing transactions which create mortgages from absolute conveyances:

"The practical test is whether there is a liability, notwithstanding or independent of the conveyance and contract of reconveyance, which the grantee can enforce against the grantor. If a loan is made to the grantor at the time of executing the conveyance, and the continued existence of his indebtedness therefor is evidenced by some collateral engagement given by the grantor, such as a note or bond, the case is simple and the transaction is clearly a mortgage. In the second place, if the conveyance is given in consideration of an antecedent debt due from the grantor, and this debt yet remains, so that the grantee may enforce his claim at some time or another against the grantor, the transaction is also a mortgage. But if this antecedent debt is wholly satisfied and extinguished by the conveyance, so that no liability remains under any circumstances against the grantor, then there is no mortgage, since there is no debt to be secured thereby. In such a case the surrender up by the grantee of the written evidences of original indebtedness, or his cancellation thereof, would be very material circumstances. Thirdly, there may be neither a present loan nor an antecedent debt, but the grantee may undertake to assume some outstanding liability of the grantor, or to pay off some claim against the grantor, so that an obligation to reimburse him would rest upon the grantor, and the conveyance may be intended to indemnify the grantee and to secure the performance of the grantor's future continuing obligation, in which case it would clearly be a mortgage." (*footnotes omitted*)

In the instant case there existed and remained not only an antecedent debt, *i.e.*, the $162,145 owing to Republic on the second mortgage, which was included in the repurchase price, and for which Mize remained liable for any deficiency, but also an assumption by Republic of Mize's liability on the first mortgage, which Republic later limited to $160,000. Republic, under the terms of the contract, could enforce against Mize liability for any deficiency; an obligation to reimburse therefore rested on Mize.

Republic's argument hinges on an intent of the parties test. Its theory is that the *Worley* factors, including the continued existence of a debt, are overridden if the intent of the parties was to create an absolute conveyance, citing *Haynes v. Gaines*, 76 Okl. 268, 185 P. 74, 75 (1919). That case, as well as several other Oklahoma cases contains the following language:

"Whether a transaction evidenced by an absolute conveyance will be held to be a sale or only a mortgage must be determined by a consideration of the peculiar circumstances of each case. The form of the conveyance is not conclusive. The intention of the parties is the only true and infallible test; this intention to be gathered from the circumstances attending the transaction and the conduct of the parties, as well as from the face of the written contract...."

The above quotation continues, however, to state:

"If a deed of conveyance be accompanied by a condition or matter of defeasance expressed in the deed, or contained in a separate instrument, or even existing merely in parol, if intended by the parties as a security for money, let [*sic*] the consideration for it have been a preexisting debt or a present advance of money to the grantor, if the relation of debtor and creditor remains, and a debt still subsists between the parties, the conveyance must be regarded as security for the payment, and it is in equity a mortgage, and will be treated in all respects as a mortgage."

In support of the proposition that the intent of the parties is the overriding test, Republic cites: *Voris v. Robbins,* 52 Okl. 671, 153 P. 120 (1915); *Haynes v. Gaines, supra, Miller v. Bush,* 200 Okl. 465, 196 P.2d 692 (1948); *Moore v. Beverlin,* 186 Okl. 620, 99 P.2d 886 (1939); and *Speed v. Fariss,* 189 Okl. 84, 113 P.2d 595 (1941). While in all of these cases the Court looked to the intent of the parties, they were all, with the exception of *Speed v. Farris, actions to have a deed declared a mortgage.* The *Speed* case involved the intent issue because the defendants raised as a defense to a quiet title action that the conveyance in question was intended as a mortgage. There the defendants failed to meet their burden of proof in that it was found that the circumstances and conduct of the parties did not evidence such intent. As previously discussed, parol evidence is admissible to show that a deed absolute on its face was intended by the parties to be a mortgage. *Gilpatrick v. Hatter,* 258 P.2d 1200 (Okl.1953); *Balduff v. Griswold,* 9 Okl. 438, 60 P. 223 (1900). It is not, however, admissible to destroy the necessary character of a mortgage where the instruments appear clearly on their face to constitute a mortgage.

Relying on the cases of *Moore v. Beverlin, supra; Haynes v. Rosenfield,* 99 Okl. 158, 225 P. 975 (1924); *State v. Moore,* 167 Okl. 28, 27 P.2d 1048 (1933); and *Owens v. State,* 133 Okl. 183, 271 P. 938 (1928); Republic argues that it does not matter whether the indebtedness continues if the intent of the parties is to create an absolute conveyance. Republic looks to the general rule that a mortgagor may, subsequent to the execution of the mortgage, sell the mortgaged premises to the mortgagee in satisfaction of the debt, and such will be upheld if after scrutiny by the courts the transaction is free from fraud, oppression, or undue advantage. Such transaction, however, must be supported by a good and sufficient consideration. *Haynes v. Rosenfield, supra.*

In *Moore v. Beverlin,* this rule was applied. However, the facts in that case are readily distinguished from the facts here.

The mortgagors there after twice failing to fulfill their obligations on the mortgage, deposited a warranty deed in escrow in accordance with a subsequent contract entered into with the mortgagee in which the mortgagors were given a fixed time to sell the property and to pay the amount owing to the mortgagee with the proceeds. The mortgagors were not able to sell the property and pursuant to the contract, the escrow agent delivered the deed to the mortgagee. In that case the Court found that the escrow arrangement was neither clearly an extension of the mortgage or a conditional sale, and looked to the contract itself and conduct of the parties, holding that the intent of the parties govern. Significant and distinguishing factors supporting the finding that the transaction was a conditional sale were: (1) there was no direct evidence as to whether or not the debt continued to exist; (2) that although a discrepancy in the value of the land and the debt is a material factor, any such discrepancy was not sufficient to be material; (3) that after delivery of the deed from the escrow, the mortgagors secured an agricultural lease and occupied the premises as tenants for two years, after which they voluntarily surrendered the premises; and (4) the mortgagors had made no inconsistent claim until two years after they had terminated their tenancy when the mortgagee leased the premises for oil and gas and a well was commenced.

Again, in *Haynes v. Rosenfield, supra,* the facts are peculiar. The defendant gave a deed to the bank as additional security on a $1,400 note secured by a mortgage. One year later, prior to the defendant's bankruptcy, the parties entered into a contract declaring the deed an absolute conveyance. The Bank paid the defendant $500 for the lot and it was agreed that after the defendant settled with his creditors the Bank would reconvey the lot for $500 plus taxes and interest.

The Court found this agreement to be an absolute conveyance even though the debtor/creditor relationship continued. The agreement appeared to have been entered

into to keep the land only from the defendant's creditors during bankruptcy. The defendant did not list the real estate as an asset during his bankruptcy proceedings. After bankruptcy the bank offered to reconvey the property but the defendant refused. He again refused when the bank offered to take a mortgage for the $500 purchase price. The Court relied on the following factors: there was nothing to show that the $500 consideration was inadequate, the defendant did not claim the property during bankruptcy proceedings, and the defendant repudiated his right to repurchase. Those factors are not present in the Mize case where the consideration was inadequate and the right to repurchase was not repudiated.

Republic also relied on *State v. Moore, supra,* where the indebtedness of the grantor continued after delivery of the deed. *Moore* can be distinguished on the basis of its rather complicated facts which are simplified here for the sake of brevity. The State brought the action on behalf of the Sapulpa State Bank which was in liquidation to foreclose a quit claim deed as a mortgage. There was conflicting evidence as to why the quit claim deed was given to the Bank which was controlled by the grantor's (Moore's) uncle. After Moore gave the deed, which was unrecorded, to the Sapulpa Bank, he gave a deed to the same property to a liquidating agent of the Webber's Falls Bank for a release from a portion of his liability to that bank. There was no evidence, other than the deed and the fact of indebtedness to support a finding of a mortgage. The trial judge found this evidence was insufficient and concluded that the Sapulpa Bank had no interest in the land.

Finally, *Owens v. State, supra,* is distinguishable from the present case because there was no defeasance in contrast to the Mize-Republic transaction where there is a contract for repurchase. The Court in *Owens* states:

"This instrument negatives the idea of a defeasance. In fact, a defeasance is wholly inconsistent with the contract, the whole or any part of it. It is a defeasance, express or implied, which makes an instrument in the form of an absolute conveyance a mortgage. An existing debt does not change the character of an absolute conveyance to that of a conditional instrument, when the facts and circumstances of the transaction negative the right of redemption."

Mize had the right to buy back the property by paying off the money due Republic. This agreement was contemporaneous with the deed and constitutes a defeasance.

Republic points to a number of factors which it urges lead to the conclusion that the intent of the parties was to create an absolute conveyance. These include, *inter alia:* (1) the deposition testimony of Jerry Mize; (2) a letter from Mize's attorney in which he indicated his understanding that Republic had legal title; (3) the affidavit filed by the Mizes with the county clerk claiming an equitable interest in the property; and (4) the proposed contract for sale of real property between the Mizes and Reeds which included the language that Republic holds legal title to the ranch.

Even had these been properly admissible, the important inquiry is whether the deed secured the payment of money, for it is the settled policy of the law that a mortgagor has the right to redeem, *whether he realizes he has that right or not.* See, *Guttenfelder v. Iebsen,* 230 Iowa 1080, 300 N.W. 299, 303 (1941). The fundamental principle of equity is that whenever a conveyance of land is given for the purpose of securing payment of an existing debt, it is a mortgage. Pomeroy's Equity Jurisprudence § 1192. As stated in *Worley, supra* 121 P. at 672:

"... If the instrument is in its essence a mortgage, the parties cannot, by any stipulation, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity.... The right of redemption is the creature of law, and not of contract. The parties are not therefore, permitted by special agreement to disannex from the mort-

gage, at the time of its execution, that which the law has declared shall be annexed to it to prevent the undue oppression of debtors by creditors...."

This right of redemption is statutorily recognized in 42 O.S.1981, § 18, which provides that "[e]very person having an interest in property subject to a lien, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed."

Republic claims the conveyance was a deed in lieu of foreclosure. Powell, Real Property ¶ 469.1 defines deed in lieu of foreclosure as a procedure whereby a mortgagor/debtor reconveys his equity of redemption in the defaulted property to the mortgagee/creditor in consideration for the creditor's promise to forbear from suing on the debt or foreclosing the security. Powell notes that the view in most jurisdictions is that conveyance of a mortgagor's equity of redemption to the mortgagee is suspect and the deed may be deemed a mere mortgage. A key factor is the adequacy of the consideration. As we previously noted, the property had been appraised to have a fair market value of more than four million dollars. Powell further states that the deed normally will be declared to be a mortgage when the parties originally were mortgagor and mortgagee and the prior debt continues—circumstances both of which exist here.

■ For the reasons discussed, we hold that the trial court's finding of a deed rather than a mortgage is clearly and convincingly against the weight of the evidence. The instruments involved indicate on their face that the debtor/creditor relationship continued after the deed was given, making it readily apparent that the relation of mortgagor and mortgagee still remains. The price was inadequate when compared to the appraised fair market value of the land, and raises a strong presumption that there exists a right to redeem and that the transaction was really a mortgage. The fact that Mize, the grantor, remained in possession is another circumstance that tends to show that the transac-

tion was not really a sale, but a mortgage, for such continuing possession, if not inconsistent with a sale, is unusual. Notwithstanding the deed, Mize remained liable to Republic on the debt, and the contemporaneous agreement giving Mize the right to repurchase also points to the deed being a security for debt rather than an absolute conveyance. These, as well as other factors discussed, *infra* lead to the irresistible conclusion that the transaction here was security for payment of money, and in equity a mortgage under 46 O.S. § 1, *supra.* Foreclosure is therefore the only means by which the right to redeem can be extinguished.

The decision of the Court of Appeals is vacated and the judgment of the District Court is reversed.

BARNES, C.J., and IRWIN, LAVENDER and DOOLIN, JJ., concur.

SIMMS, V.C.J., concurs in result.

HODGES and HARGRAVE, JJ., dissent.

OPALA, J., dissents from Parts I and II, concurs in Part III.